### WITT v. GILMOUR et al.

(Supreme Court, Appellate Division, Second Department. March 31, 1916.)

1. CONTRACTS ⊜➝280(3)—BUILDING CONTRACTS—SUBSTANTIAL PERFORMANCE.

Substantial performance of a building contract does not depend, like the descriptive term "more or less," on a percentage, and the fact that the shortcomings were less than 10 per cent. of the contract price does not establish substantial performance.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1252, 1256, 1257; Dec. Dig. ⊜➝280(3).]

⊜➝For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. MECHANICS' LIENS ⟲⟳93—RIGHT TO LIEN—PERFORMANCE ⟩OF CONTRACT.

An architect, who was also the general contractor, *held* not to have substantially completed the house in conformity with the contract, and therefore not entitled to a lien for the balance of the contract price.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 124; Dec. Dig. ⟲⟳93.]

3. MECHANICS' LIENS ⟲⟳93—RIGHT TO LIEN—PERFORMANCE OF CONTRACT— WAIVER OF OBJECTIONS.

Payments by the owner to the contractor, the first of which was made before the most defective work was begun, and the second after the owner had been away and had visited the house only once since her return, at which time the contractor stated that the contract did not make any payments final until all were made, and that he would correct anything wrong, are not an acceptance of defective work or a waiver of objections which will entitle the contractor to a lien therefor.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 124; Dec. Dig. ⟲⟳93.]

4. MECHANICS' LIENS ⟲⟳99(1)—SUBCONTRACTOR'S LIEN—PROVISION OF CONTRACT.

Where the architect contracted to build a house at a·fixed figure, with a provision that if it cost less than that amount, with 10 per cent. commission added, the owner was to have the difference, and that the owner was to have copies of all subcontracts let, and upon completion an itemized statement of the cost of the work, the owner was charged with notice of the subcontracts so as to entitle the subcontractors to their liens.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 131; Dec. Dig. ⟲⟳99(1).]

5. APPEAL AND ERROR ⟲⟳194(1)—QUESTIONS PRESENTED—QUESTIONS RAISED FIRST ON APPEAL.

In a mechanic's lien suit against the owner and several subcontractors who answered claiming liens, failure to serve the subcontractors' answers on the owner cannot be first urged on appeal, as an objection to the right of the subcontractors to their liens, where they were proved at the trial without objection.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1241–1243, 1246; Dec. Dig. ⟲⟳194(1).]

Appeal from Special Term, Westchester County.

Mechanics' lien suit by Ferdinand Witt against Gertrude Gilmour and others. From a judgment in favor of the plaintiff and certain defendants, defendant Gilmour appeals. Judgment reduced as to plaintiff, and affirmed as to the lienor defendants.

Appeal by the defendant Gertrude Gilmour from a judgment entered in the office of the clerk of the county of Westchester on the 21st day of August, 1914, on a decision at Special Term of the Supreme Court for Westchester county in a mechanic's lien suit, in favor of plaintiff and certain defendants, for $3,272.19.

The plaintiff, an architect, furnished designs for a country house and garage at Riverview Manor, Dobbs Ferry, on the Hudson. Eventually he undertook, as contractor, to build the same for $8,000, less $600, allowed defendant for plumbing fixtures, which, however, plaintiff was to install. There was an alternative agreement on the basis of cost by the subcontractors with 10 per cent. architect's commissions, if such result should be under $8,000.

Plaintiff sublet the work to various contractors. As architect, he signed two certificates of performance, upon which he was paid $4,000. Mrs. Gilmour claimed defects and omissions. Plaintiff, as architect, issued to himself a final certificate, and then brought a mechanic's lien suit for $5,123.15,

alleging due performance. The first trial started on June 19 and 20, 1913. Defects and deficiencies appeared, especially in the chimney, foundations, and other matters of structure. Both sides, however, rested. Plaintiff later applied to amend so as to aver substantial performance. This leave was granted by order of February 15, 1914. The trial was resumed April 25, 1914. At the close of that day's hearing, counsel agreed to go on in the absence of the judge, taking testimony with the stenographer, objections to be passed upon when the court should read the minutes. In this way the concluding testimony went in, being about 192 printed pages, which was afterwards submitted. In the decision made, the court held plaintiff for defects in footings, omissions of piers in cellar, defects in chimney, absence of clean-out doors in flue bottom, replacing window glass, completing the plumbing and heating, repairing porch ceiling, omission of book shelves and partition in the garage, for all which he allowed $793. He found plaintiff entitled to $140 for extra work. On this basis he decreed $2,747, with interest and costs, against the owner. Mrs. Gilmour appealed, claiming other defects and denying performance.

Henry B. Johnson, of New York City, for appellant.
Arthur Rowland, of Yonkers, for respondent Witt.
Ralph Earl Prime, Jr., of Yonkers, for respondent Brockhurst.

Argued before THOMAS, CARR, STAPLETON, RICH, and PUTNAM, JJ.

PER CURIAM. [1] It is suggested that substantial performance might be found if the value and expense of the contractor's shortcomings were less than 10 per cent. of the entire contract. Here the contract was $8,000 gross and $7,400 net. Counsel on one side point to the allowance of $793 as less than 10 per cent. of the gross contract, and, on the other side, that it exceeds 10 per cent. of the $7,400 to be paid to plaintiff.

The complaint of a building contractor whose omissions amounted to 20 per cent. of the contract price was dismissed (D'Amato v. Gentile, 54 App. Div. 625, 66 N. Y. Supp. 833; Id., 173 N. Y. 596, 65 N. E. 1116), and this court has declared that such omissions to the extent of one-tenth of the contract unquestionably would not be substantial performance (Anderson v. Petereit, 86 Hun, 600, 33 N. Y. Supp. 741). Performance of a building contract, however, does not depend, like the descriptive term "more or less," on a percentage. By the amended complaint Mr. Witt avers that he has fully, substantially, fulfilled and performed all of the terms, covenants, and conditions of said contract on his part to be performed—except as caused by the owner's default—and that any variation from the plans and specifications defendant has waived and assented to; that the building, as completed, was in all respects a good and workmanlike job. This is the performance which plaintiff undertook to show.

[2] The construction of the chimney by plaintiff's subcontractor clearly violated the specifications. Below the first floor there was not the required bonding courses. There was but a single course of brick above the first floor; the space behind was irregularly laid without bond; the interspaces between this course and the flue lining filled with rough brickbats and mortar. Being but one course of brick, there was no bonding course. This loose construction was also on the third floor. Even this scanty brickwork stopped under the roof, so that at

that opening and above there was only flue linings with stucco laid on. Into the lower chimney wall two headers or girders were let in a considerable distance. There was evidence that these or other timbers penetrated to a dangerous proximity of 3 inches from the laundry flue. Such mason work was against the specifications, and was manifestly hazardous.

Although there was "framing out" about the chimney, the under rough flooring on the first floor was suffered to run about an inch into this chimney wall. The flue linings, which became so important in view of the slack masonry about them, were set irregularly, so as to leave cracks between the sections, through which sparks might escape. Such defects (as proved by cuttings made in the course of the trial) should demand that a chimney so built be taken down and be relaid in a safe manner, as the specifications provided.

The foundations were bad. The footing courses which were specified to be of brickwork, under the chimneys, brick walls and piers for cellar girders, were not so laid. Instead, they were of concrete, improperly laid without boxes, containing rubbish, brickbats, and cement so poor that it crumbled in the hand.

In order to support the interior frame, first floor beams and partitions, two Georgia pine girders ran the whole length of the cellar. They were to rest on brick piers rising from footing courses, the piers to start 15 inches above the top of the cellar floor. There were no such piers. The northerly ends were set into this badly laid chimney wall. The south exterior ends were laid on a 12-inch hollow tile wall and there blocked up by brickbats and pieces of shingle. In excuse, it was claimed that this hollow tile had been stiffened by a reinforcement of one-half-inch vertical steel rods, and then filled in with concrete. However, before the next court hearing, this tile wall was cut into and laid open, but no reinforcing rods or concrete were found.

The learned court at Special Term held that plaintiff must be required to make good these foundation footings, and also the lack of piers, as well as for rebuilding the chimney in part. He found that the plumbing and heating work was not completed; that the iron pipe and the window glass was of an inferior quality, and other omissions for which he estimated the owner's damages. The evidence, however, shows other substantial breaches in the details of construction. Extra heavy water supply pipes and substantial stringers for cellar stairs were specified, but not furnished. Instead of conforming to the specifications for cement gravel and sand to deafen the bathroom floors, the mason used there a mixture of cinders, tending to destroy the water pipes by corrosion. The plumbing subcontractor put in one-half-inch water risers, and not the specified three-quarter-inch, thus reducing the proper water supply. Instead of best metal lathing under bathroom tiles, the mason laid inferior quality lath, which he had taken for debt from another contractor. Instead of 4-inch leaders, as specified, plaintiff's contractor supplied but 3-inch pipes. The parquet floor was not only three-eighths-inch thick instead of one-half-inch as specified, but, being laid over irregular flooring, was uneven and wavy. Other details were found by the court at Special

Term which need not be repeated. They are far from showing substantial performance and a good and workmanlike building.

[3] Plaintiff's averment of waiver and acceptance, to be inferred from the installment payments made upon his certificates, cannot be sustained. The payment of $2,000 on June 14, 1912, on plaintiff's first certificate was before work on the chimney had begun. Complaint of the footings had already been made. The Gilmours were absent during much of the following intervals, and after their return had visited the house but once before making the second payment on August 21st. Plaintiff then said that the contract did not make any payments final until all were made; and, if there was any mistake or anything wrong, he would correct it.

Repeated examination of the testimony for defendant—much of which stands uncontradicted—shows deviation from the specifications that are grave and vital, not only in details, but in essentials. They are so many and substantial, running through the structural work, that the cumulative effect of such departures from the specifications forbids a finding of substantial performance. While it was the subcontractors who willfully skimped the work and imposed inferior materials, their faults cannot relieve plaintiff, since he undertook the job as a building contractor, and also assumed the professional supervision of an architect. The breaches cannot be treated as slight or inconsiderable, or dismissed as merely technical. They not only go to the stability of the structure, but expose dangerously the building, and those in it, to the hazards of fire. The owner has contracted for a construction to guard against these perils and defects. She also contracted for certain materials built and installed in a safe and workmanlike manner by specifications accurately drawn up by plaintiff. She is not bound to pay, unless the conditions are performed or waived or excused on just grounds. The testimony showed that the filling-in joists were spaced 18 inches and 21 inches from centers, instead of 16 inches as specified, which was also the spacing required for the rafters, yet the rafters were actually set 20, 23, and even 24 inches apart. Where nailing joists were to be 12 inches apart from center to center, but were actually spaced 16 inches apart, Comstock, J., said:

"If the owner, having regard to strength and durability, has contracted for walls of specified materials to be laid in a particular manner, or for a given number of joists and beams, the builder has no right to substitute his own judgment or that of others. Having departed from the agreement, if performance has not been waived by the other party, the law will not allow him to allege that he has made as good a building as the one he engaged to erect. He can demand payment only upon and according to the terms of his contract, and if the conditions on which payment is due have not been performed, then the right to demand it does not exist." Smith v. Brady, 17 N. Y. 173, 186 (72 Am. Dec. 442).

See Carpenter v. Ellsworth, 151 App. Div. 532, 136 N. Y. Supp. 108; Schultze v. Goodstein, 180 N. Y. 248, 73 N. E. 21; Easthampton Lumber & Coal Co. v. Worthington, 186 N. Y. 407, 79 N. E. 323; Fuchs v. Saladino, 133 App. Div. 710, 118 N. Y. Supp. 172.

The structure as erected is substantially different from, and inferior to, the residence which plaintiff contracted to build. It follows

that the findings of fact numbered fourth, fifth, sixth, seventh and tenth should be reversed, and corrected findings made in accordance with this opinion.

[4] The alternative provision in case the buildings cost less than $8,000, in such case fixed the owner's liability on the basis of cost and 10 per cent. As the work should go on, and subcontracts let, plaintiff was to give Mrs. Gilmour copies of all subcontracts, and, upon completion, submit an itemized statement of the cost of the work. If, including plaintiff's commission, that entire cost should be less than $8,000, Mrs. Gilmour was to have this difference. Such a provision, even if copies of the subcontracts were not promptly furnished her, tended to charge her with notice of same, and justified the findings that these liens by subcontractors were for work and materials furnished with appellant's knowledge and consent.

[5] Appellant, however contends that no judgment should be given against her property, because these lienors never served their answers on appellant as a codefendant. However, as the liens were proved without objection, we think this point now unavailable. Mr. Witt's recovery should be reduced to $140, the value and amount of his extra services, as found by the court, but without costs.

The judgment as to Ferdinand Witt should therefore be reduced to the sum of $140, with interest from January 30, 1913, and affirmed in favor of the other respective lienors, Lawrence Bros., Incorporated, George A. Houle, and William A. Brockhurst, without costs.