YESHIVA UNIVERSITY, Respondent, v FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Appellant, et al., Defendants.

First Department, March 25, 1986

APPEARANCES OF COUNSEL

*Henry James Wallach, P. C.,* of counsel *(Mark S. Gamell* with him on the brief; *Hart & Hume,* attorneys), for appellant.

*Martin H. Bockstein* of counsel *(Steven B. Markin* with him on the brief; *Sidney Schutz,* attorney), for respondent.

### OPINION OF THE COURT

WALLACH, J.

Defendant Fidelity and Deposit Company of Maryland (Fidelity) appeals from an order denying its motion to dismiss this action as time barred. The action was brought to recover on a performance bond. The bond, a widely utilized, standard form published by the American Institute of Architects, contained a provision limiting the time for commencing an action thereon as follows: "Any suit under this bond must be instituted before the expiration of two (2) years from the date on which final payment under the Contract falls due."

Since the interpretation placed upon this language by Special Term is not in accord with its plain meaning and the manifest intention of the parties, we reverse.

On August 23, 1976, plaintiff Yeshiva University (Yeshiva) and defendant Tishman Construction Corporation of New York (Tishman) entered into a written contract which, though not part of the record, is described in the complaint as having involved a promise by Tishman, as construction manager, to construct a certain building to house a cancer research institute, referred to as "the project", on a site owned by Yeshiva (the main contract). On December 15, 1976, Tishman entered into a contract with Labequipco, Division of Frigitemp Corp. (Labequipco) for the portion of the main contract calling for metal casework and laboratory furniture (the subcontract). Pursuant to the subcontract, on January 3, 1977, Labequipco, as principal, procured from Fidelity, as surety, the bond in issue guaranteeing both Tishman and Yeshiva, as obligees,

that the subcontract would be completed in accordance with its terms and conditions.

Labequipco commenced work, but, in March 1978, filed for bankruptcy, an event of default under the subcontract. Fidelity thereupon hired another contractor, Laboratory Furniture, Inc. (Laboratory), to finish the job. In connection with this new hiring, Fidelity wanted Tishman and Yeshiva to make all further payments under the subcontract to it, and not to the new contractor, a demand to which both agreed in a writing dated May 31, 1978. On June 21, 1979, Tishman sent Fidelity a check which was described in a covering letter as the "final payment" of the subcontract. Copies of this letter were sent to Yeshiva, Yeshiva's architect and Yeshiva's attorney, none of whom responded. In November 1983, Yeshiva, having hired a consultant, learned that the reason why the metal casework and furniture in its laboratories was rusting and otherwise becoming useless was because a certain phosphate treatment specified in the main contract necessary to preserve metal surfaces had not been applied by Laboratory. On January 31, 1984, Yeshiva demanded of Tishman that it repair or replace the deteriorating casework and furniture and notify Fidelity of the situation, but Fidelity has refused to make good the defective work. Final payment having been made on June 21, 1979 when Tishman forwarded a check described as such to Fidelity, and the action not having been commenced against Fidelity until March 1984, almost five years later, the cause of action against it, Fidelity argues, is time barred. This court agrees.

Reasoning that the existence of a defect meant that the work had not been completed and that final payment, therefore, never fell due, Special Term concluded that the two-year contractual limitation period had never commenced to run notwithstanding the check sent by Tishman to Fidelity in June 1979 ostensibly as the final payment due under the subcontract. Such a construction leads to a somewhat startling paradox: not only was a provision in the bond purporting to modify the otherwise applicable statutory period of limitations read out of the bond, but, by postponing accrual until such time as a defect became manifest, the statutory period was rendered inoperative as well, leaving Fidelity liable on the bond, at least theoretically, for all time. If indeed that were the intention of the parties to the bond, their agreement would not be enforceable. An agreement to waive or even extend the Statute of Limitations, adopted at the inception of

the contract and not after the cause of action has accrued, is against public policy and void *(Kassner & Co. v City of New York,* 46 NY2d 544, 550-552). Thus, if this widely used, standard clause is to be given effect, it must be construed not as a waiver or extension but as a shortening of the Statute of Limitations. So viewed, it "does not conflict with public policy but, in fact, 'more effectively secures the end sought to be attained by the statute of limitations' " *(Kassner & Co. v City of New York, supra,* at p 551, quoting *Ripley v Aetna Ins. Co.,* 30 NY 136, 163; CPLR 201).

In holding that final payment never fell due, Special Term relied upon two provisions of the subcontract. The first, insofar as invoked, provided that the "balance owing", dubbed "final payment" in large, printed, block letters set off in the margin, was to become due and payable within 60 days after the completion of all work called for in the subcontract and its acceptance by Tishman, Yeshiva and Yeshiva's architect. The second provided that Tishman could hold the contractor responsible for "unsound work or materials" permitted to remain on the site during construction for up to one year after completion of the entire project, and that any payments made by Tishman to the contractor during this period were not to be construed as evidence of an acceptance of the contractor's work.

Reliance by the court below on this latter provision was error. As a rule, acceptance of performance under a construction contract is a waiver of the right to recover for defects that were known or discernible with reasonable inspection, i.e., patent, as opposed to latent, defects *(Town of Tonawanda v Stapell, Mumm & Beals Corp.,* 240 App Div 472, *affd* 265 NY 630). The intent of the clause in question was to vary this rule so as to permit the prime contractor to make full payment to the subcontractor without waiving the subcontractor's liability for patent defects. It relates to the duration of the subcontractor's liability for patent defects and, though its enforceability would be problematic were it to result in a lengthening of the statutory period, it has nothing to do with the question of when a cause of action for such, or any other liability of the subcontractor, accrues.

Nor does the other provision of the subcontract cited by the court below—that final payment was not due until the work was completed and accepted by Tishman, Yeshiva and the architect—support the view that final payment never fell due. It should first be noted that, to the extent it conditions final

payment on acceptance as well as completion of the work, the clause is of doubtful validity. In an action upon a construction contract, the cause of action generally accrues upon completion of construction, meaning completion of the actual physical work *(State of New York v Lundin,* 60 NY2d 987, 989). Application of this principle could not be avoided by Tishman and Yeshiva indefinitely withholding their acceptance of the work. " 'The public policy represented by the statute of limitations becomes pertinent where the contract not to plead the statute is in form or effect a contract to extend the period as provided by statute *or to postpone the time from which the period of limitation is to be computed.' " (Kassner & Co. v City of New York, supra,* at p 551, quoting 1961 Report of NY Law Rev Commn, at 97, 98; emphasis added by the court.) The requirement that the work be accepted as well as completed is therefore of doubtful effect if not altogether superfluous.

This is a point Fidelity does not and need not raise. Absent explanation, Tishman's letter of June 21, 1979 forwarding final payment is conclusive evidence of what was, in any event, an acceptance of Laboratory's performance *(see, Concrete Constr. Corp. v Commercial Union Ins. Co.,* 68 AD2d 866; *Board of Educ. v Baylor,* 288 NY 665). And such an acceptance by Tishman must be held to be an acceptance by Yeshiva and its architect as well. Under the subcontract, final payment from Tishman was not due until Tishman was in receipt of funds from Yeshiva identified for that purpose; indeed, progress payments were subject to a like restriction. If this circumstance did not make Tishman Yeshiva's agent for purposes of dealing with the contractor, at the least the interests of the two vis-à-vis the contractor's right to payment were so closely united that a response from Yeshiva, or its architect, to Tishman's letter forwarding final payment was to be expected were there an objection. Silence, when one would naturally be expected to speak, is often as significant as an express admission (Richardson, Evidence §§ 222, 239 [Prince 10th ed]). This privity of interest was explicitly carried over into the bond itself, where both Tishman and Yeshiva were denominated as obligees. But perhaps the strongest indication of Yeshiva's recognition that the job was finished and acceptable was its taking occupancy of the building *(see, Cabrini Med. Center v Desina,* 64 NY2d 1059, 1061; *State of New York v Lundin, supra,* at p 990). Surely Yeshiva would not have moved into a building designed for scientific research unless it, and its architect, were satisfied with the laboratory facili-

ties provided. The fact that those facilities were defective does not mean, at least for purposes of the contract provision in question, that their construction had never been completed *(cf. Comey v United Sur. Co.,* 217 NY 268, 277 [stating that a contractual limitation which assumes completion of the work is applicable when, after the work is done, the claim is made that it was done defectively, and holding such a limitation to be inapplicable when the work was abandoned]). Indeed, a claim, such as is made here, that the work was latently defective implies that the work was completed.

Because the defects were latent in nature, neither final payment nor occupancy of the building can be construed as a waiver of Yeshiva's (and Tishman's) right to hold Laboratory liable for money damages. Such a remedy would be available for a period of six years measured from the time final payment fell due under the subcontract (CPLR 213 [2]; *see, City of New York v State of New York,* 40 NY2d 659, 668). But Fidelity's obligation on the bond, though substantively derived from Laboratory's liability on the subcontract, was, by agreement, made subject to a different period of limitations, namely, two years measured from the time final payment fell due under the subcontract. Since final payment fell due, at the latest, when Yeshiva and its architect, speaking through Tishman, acknowledged it to be due, more than two years prior to the commencement of the action against Fidelity, the cause of action against Fidelity is time barred.

*Clyde-Savannah Cent. School Dist. v Naetzker, Thorsell & Dove* (73 AD2d 810), relied upon by Yeshiva and Special Term, is distinguishable. The cause of action there was asserted by the general contractor against the surety of a subcontractor more than two years after the general contractor made what it acknowledged to be final payment under the subcontract. The court held the claim timely, finding that the general contractor's acceptance of the subcontractor's performance was not, standing alone, proof of an acceptance by the owner and the architect. Here, by contrast, the general contractor's acceptance does not stand alone; additional circumstances are present signaling an acceptance by the owner and the architect as well.

In view of the foregoing, it is unnecessary to consider whether the complaint, lacking as it does an express allegation that the action was timely commenced in accordance with the bond, should be dismissed as against Fidelity for failure to state a cause of action.

Accordingly, the order of Supreme Court, New York County (Alfred M. Ascione, J.), entered December 31, 1984 should be reversed, on the law, with costs, Fidelity's motion granted and judgment granted in favor of defendant-appellant Fidelity and against plaintiff-respondent Yeshiva dismissing the complaint.

SANDLER, J. P., ASCH, KASSAL and ROSENBERGER, JJ., concur.

Order, Supreme Court, New York County, entered on December 31, 1984, unanimously reversed, on the law, defendant-appellant's motion granted and judgment granted in favor of said defendant-appellant against plaintiff-respondent dismissing the complaint. Appellant shall recover of respondent $75 costs and disbursements of this appeal.