MENORAH NURSING HOME, INC., Formerly Known as MENORAH NURSING HOME COMPANY, INC., et al., Plaintiffs, v NIKITA ZUKOV et al., Defendants, and TRAVELERS INDEMNITY COMPANY, Defendant and Third-Party Plaintiff-Appellant. ALUMNI PLUMBING & HEATING CORP. et al., Third-Party Defendants-Respondents. (And Fourth- and Fifth-Party Actions.)

Second Department, December 11, 1989

## APPEARANCES OF COUNSEL

*Friedman, Wang & Bleiberg, P. C. (Arthur S. Friedman, Peter N. Wang* and *Susan J. Schwartz* of counsel), for defendant third-party plaintiff-appellant.

*Lester Schwab Katz & Dwyer (Steven B. Prystowsky* and *Eric A. Portuguese* of counsel), for Alumni Plumbing & Heating Corp., third-party defendant-respondent.

*Rubin & Tablante (Albert S. Tablante, Jr.,* and *Jane R. Svoboda* of counsel), for Jaffie Mechanical, Inc., and Loxcreen Architectural Products Corp., third-party defendants-respondents.

*Popkin & Rothberg (Neal S. Spector* of counsel), for Craft Roofing and Waterproofing, Inc., formerly known as Craft Roofing Corp., third-party defendant-respondent.

*Gottesman, Wolgel, Smith & Secunda, P. C. (Kenneth W. Malamy* of counsel), for National Bonding and Accident Insurance Company, third-party defendant-respondent.

## OPINION OF THE COURT

BRACKEN, J. P.

The plaintiffs have sued several parties whom they allege to have been responsible for economic losses suffered in connection with a construction project. The plaintiffs seek to impose liability upon the defendant and third-party plaintiff Travelers Indemnity Company (hereinafter Travelers) on the theory that Travelers is legally responsible as a surety for the alleged failure of the project's general contractor, Blitman Construction Corp. (hereinafter Blitman) to fulfill its contractual obligations. The Supreme Court dismissed the amended third-party complaint brought by Travelers against several of Blitman's subcontractors whose wrongful conduct allegedly caused the occurrence of Blitman's default. We now reverse the order under review insofar as appealed from because the law permits Travelers, as the party called upon to pay out damages for Blitman's default, to obtain indemnification to the extent that the wrongful conduct of any of the subcontractors might have caused that default.

I

On appeal, it is argued that Travelers has no standing to sue Blitman's subcontractors. The respondents, which have appeared separately and upon separate briefs, argue that as a surety on a performance bond compelled to pay out damages for the default of its principal, Travelers may be subrogated *only* to the rights of the obligees (the plaintiffs) to whom such damages are paid *(see, United States Cas. Co. v Jungreis,* 21 AD2d 769). Apparently, the parties to this appeal assume that the plaintiffs themselves would have no valid cause of action against the subcontractors; therefore, if Travelers can be equitably subrogated *only* to the rights of the plaintiffs *(United States Cas. Co. v Jungreis, supra),* then the amended third-party complaint was properly dismissed.

## A

It is true that a surety who answers for the default of his principal pursuant to the terms of a performance bond, either by completing the work required under the principal's contract with the owner-obligee, or by paying compensation to the owner-obligee, is entitled to be subrogated to the rights of the obligee whom he has paid, or on whose behalf he has completed the contract (see generally, Pearlman v Reliance Ins. Co., 371 US 132; Scarsdale Natl. Bank & Trust Co. v United States Fid. & Guar. Co., 264 NY 159; Kolb v National Sur. Co., 176 NY 233; Lewis v Palmer, 28 NY 271; State Bank v Dan-Bar Contr. Co., 23 Misc 2d 487, affd 12 AD2d 416, affd 12 NY2d 804; American Sur. Co. v Town of Islip, 268 App Div 92; 63 NY Jur 2d, Guaranty and Suretyship, §§ 440, 585; Simpson, Suretyship § 47; McClintock, Equity § 123 [2d ed]). However, the right of a surety under these circumstances to be subrogated to the rights of its obligee is not exclusive of all other equitable subrogation rights. The general rule is that, upon answering for the default of its principal, a surety may be subrogated to any claims which the defaulting principal might have against third parties whose wrongful conduct allegedly was a cause of the default (see generally, Courtney v Commercial Lovelace Motor Frgt., US Ct App, 10th Cir, Oct. 24, 1988, Moore, Barrett and Borby, JJ.; Travelers Indem. Co. v Evans Pipe Co., 432 F2d 211; St. Paul Fire & Mar. Ins. Co. v United States, 370 F2d 870; Sentry Ins. v Lardner Elevator Co., 153 Mich App 317, 395 NW2d 31; Argonaut Ins. Co. v Commercial Std. Ins. Co., 380 So 2d 1066 [Fla]; United States Fid. & Guar. Co. v North Am. Steel Corp., 335 So 2d 18 [Fla]; Maryland Cas. Co. v King, 381 P2d 153 [Okla]; 11A Appleman, Insurance Law and Practice § 6610). Similarly, a surety on a performance bond who completes the contract after a default by the principal is subrogated to the principal's right to contract payments which may have been retained by the owner-obligee (see, e.g., United States Fid. & Guar. Co. v Triborough Bridge Auth., 297 NY 31; Tri-City Elec. Co. v People, 96 AD2d 146, 149, affd 63 NY2d 969; Scarsdale Natl. Bank & Trust Co. v United States Fid. & Guar. Co., 264 NY 159, supra; 63 NY Jur 2d, Guaranty and Suretyship, § 586; 16 Couch, Insurance § 61:396 [2d ed]).

We believe that the statement made by the Appellate Division, First Department, in United States Cas. Co. v Jungreis (21 AD2d 769, supra), to the effect that a surety on a performance bond may not be subrogated to the rights of any

party other than the obligee, constitutes an incidental remark rather than an accurate summary of the court's holding. In any event, we do not believe that the obiter dictum in question is a correct statement of the law, nor does there appear to be any conceivable rationale to support such a rule. The doctrine of subrogation is an equitable one which the court should be inclined to extend rather than restrict *(see generally,* 23 NY Jur 2d, Contribution, Indemnity, and Subrogation, § 25). It seems only equitable to permit Travelers, which is potentially liable to the plaintiffs as a result of its principal's default, to seek indemnification from the third-party defendants whose misconduct allegedly caused the default. Thus, Travelers is a contingent subrogee not only of the plaintiffs, but also of its principal Blitman.

Furthermore, Travelers does not lack standing simply because it has not yet been called upon to pay any money pursuant to its bond. While it is true that the remedy of subrogation is generally available to a surety only when the claim of the creditor obligee has been paid *(see generally,* 63 NY Jur 2d, Guaranty and Suretyship, § 435), "[t]he Court of Appeals has already sustained the viability of a contingent third-party claim based on subrogation" *(American Home Assur. Co. v Flushing Sav. Bank,* 68 AD2d 170, 174 [Murphy, P. J., concurring], *affd* 52 NY2d 1010, citing *Krause v American Guar. & Liab. Ins. Co.,* 22 NY2d 147; *Consolidated Edison Co. v Royal Indem. Co.,* 41 AD2d 37; *see also, Town of Wappinger v Republic Ins. Co.,* 89 AD2d 621, 622). In the interest of judicial economy, Travelers should be permitted to assert third-party causes of action which might be considered technically premature.

## B

The Supreme Court dismissed Travelers' amended third-party complaint insofar as it was asserted against National Bonding and Accident Insurance Company (hereinafter National) on an additional ground. Travelers' claim against National is based on allegations that National is legally responsible to answer for the default of the subcontractor Mopal Contracting Corp. (hereinafter Mopal), on whose behalf National had issued a performance bond. National argued, and the Supreme Court held, that pursuant to the terms of its bond National may not be held liable to any party except its obligee (Blitman) or a "successor" of its obligee.

■ The court in *Argonaut Ins. Co. v Commercial Std. Ins. Co.* (380 So 2d 1066, *supra)* considered and rejected essentially the same argument as is now being made by National in connection with the scope of the term "successor" as that term is used in a performance bond. In that case, the surety on a performance bond was held to have been subrogated to the rights of its principal, a general contractor. That surety was also held to be a "successor" of the general contractor, so as to have standing to sue the surety for one of the subcontractors. The court stated *(Argonaut Ins. Co. v Commercial Std. Ins. Co., supra,* at 1068, n 1): "[The subcontractor's surety] suggests that we should give a very narrow construction to the word successor, which would limit it to situations involving successor corporations. We do not believe that so narrow a construction is called for in this context. As far as we can determine, the reason that bonds like the one involved here contain such a clause is to attempt to protect the surety from the claims of its principal's subcontractors and materialmen as third party beneficiaries under the bond".

In accordance with this view, Travelers may be considered a "successor" to Blitman as that term is commonly understood.

## II

### A

■ The third-party defendants advanced several arguments in support of their contention that the amended third-party complaint must be dismissed, and most of these arguments were not considered by the Supreme Court due to that court's exclusive reliance on the movants' argument with respect to standing. Travelers, in its original brief, confined itself to arguing that the Supreme Court's determination with respect to the standing issue was erroneous, and, for the reasons outlined above, we agree. However, the general rule is that an appellate court may affirm an order which is itself correct, if any of the grounds advanced in the court of original instance in fact support the relief granted in the order, irrespective of whether the reasoning expressed by the court in its decision was correct *(see generally, Town of Massena v Niagara Mohawk Power Corp.,* 45 NY2d 482, 488; *Erie R. R. Co. v International Ry. Co.,* 209 App Div 380, *affd* 239 NY 598; *Celeste v State of New York,* 15 AD2d 593; *Roseman v Fidelity & Deposit Co.,* 148 Misc 132; 10 Carmody-Wait 2d, NY Prac § 70:423, at 693).

Pursuant to this general rule, National argues that the order under review should be affirmed on two alternative grounds: first, that Travelers' third-party action against it is time barred and, second, that Travelers' third-party action should be dismissed because its obligee (Blitman) never declared a default by its principal (Mopal) in connection with Mopal's performance of the subcontract.

## B

National correctly asserts that the evidence produced in connection with the parties' various motions establishes, as a matter of law, that National's obligee, the project's general contractor (Blitman), certified, in August of 1982, that National's principal, the subcontractor Mopal, had "fully and acceptably completed" its work. Based on this fact, National seeks to dismiss the amended third-party complaint on the ground that, even if it were assumed that Travelers is a contingent subrogee of and thus a successor to Blitman, any action by Blitman would be barred by the terms of National's bond, which provide that "[a]ny suit under this bond must be instituted before the expiration of two years from date on which final payment under the subcontract falls due".

The flaw in National's argument is that, pursuant to the terms of its subcontract, Mopal is not entitled to final payment from Blitman until Blitman has received final payment from the owner. While it may have been shown that Mopal in fact finished its work, it has *not* been shown that Blitman has received its final payment, or that the final payment to Mopal has become due.

Under these circumstances, National's Statute of Limitations argument furnishes no basis upon which to affirm so much of the order appealed from as dismissed the amended third-party complaint against National. As stated by the court in *Clyde-Savannah Cent. School Dist. v Naetzker, Thorsell & Dove* (73 AD2d 810, 811): "The rights of parties to written contracts 'should be determined by the plain meaning of the language used, if possible' *(Schuler-Haas Elec. Corp. v Aetna Cas. & Sur. Co.,* 49 AD2d 60, 63, affd 40 NY2d 883; see *Benderson Dev. Co. v Schwab Bros. Trucking,* 64 AD2d 447, 456). Performance bonds are governed by the usual rules of construction of adhesion contracts, and contractual time limitations contained therein are to be strictly construed against the surety *(Comey v United Sur. Co.,* 217 NY 268)". Applying

this rule of strict construction, and reading the terms of National's bond in conjunction with the terms of Mopal's subcontract *(see, Madawick Contr. Co. v Travelers Ins. Co.,* 307 NY 111, 118; *Hunt v Bankers & Shippers Ins. Co.,* 60 AD2d 781; *Clyde-Savannah Cent. School Dist. v Naetzker, Thorsell & Dove, supra),* we conclude that, since final payment has not yet been made to Blitman, Blitman's final payment to Mopal is not yet due, and that the contractual Statute of Limitations contained in National's bond has not begun to run.

National's reliance on the case of *Yeshiva Univ. v Fidelity & Deposit Co.* (116 AD2d 49), is misplaced. In that case, the final payment had actually been made in connection with the subcontract in question *(Yeshiva Univ. v Fidelity & Deposit Co., supra,* at 51), and this was considered by the court as conclusive evidence that the subcontractor's work had been accepted *(Yeshiva Univ. v Fidelity & Deposit Co., supra,* at 53; *see also, Town of Esopus v Brinnier & Larios,* 135 AD2d 935). In the present case, issues of fact exist as to whether the final payment to Mopal has been made, and as to whether that final payment has become due, and if so, when it became due *(see, Cortland Paving Co. v Capitol Dist. Contrs.,* 111 AD2d 955; *Stanley R. Benjamin, Inc. v Fidelity & Cas. Co.,* 72 Misc 2d 742; *Salem School Dist. 43-3 v Puetz Constr.,* 353 NW2d 51 [SD]).

National has thus failed to meet its burden of proving that Travelers' third-party action is time barred pursuant to the terms of National's bond. Furthermore, assuming that a defense of laches is available at all, we find that issues of fact as to when Travelers should have known of its right of action, and as to whether National has been prejudiced by any delay, preclude the issuance of summary judgment on that basis.

## C

■ National also argues that Travelers' third-party action should be dismissed because the obligee named in its bond (Blitman), far from ever declaring a default by Mopal in the performance of its subcontract, actually certified that Mopal's work had been satisfactorily completed. This argument must fail for the basic reason that National's bond contains no provision which expressly requires a notice of default as a condition precedent to any legal action on the bond *(see, Babylon Assocs. v County of Suffolk,* 101 AD2d 207, 217-218; *see also, State of New York v Peerless Ins. Co.,* 108 AD2d 385,

390, *affd* 67 NY2d 845). The cases relied upon by National in connection with this argument *(Ulster Elec. Supply Co. v Maryland Cas. Co.,* 35 AD2d 309, *affd* 30 NY2d 712; *American Indus. Contr. Co. v Travelers Indem. Co.,* 54 AD2d 679, *affd* 42 NY2d 1041; *Ferrante Equip. Co. v Simkin & Sons,* 30 AD2d 525; *Extruded Louver Corp. v McNulty,* 18 AD2d 661; *Walters Co. v DeBower,* 191 Neb 544, 216 NW2d 515) involved bonds in which a prelitigation notice of default was expressly required. Therefore, National is not entitled to a dismissal of the amended third-party complaint on this basis.

### III

In their respective briefs, the third-party defendant-respondents Loxcreen Architectural Products Corp. (hereinafter Loxcreen) and Jaffie Mechanical, Inc. (hereinafter Jaffie) argue that the order under review should be affirmed insofar as appealed from because Travelers has failed to state valid third-party causes of action (CPLR 3211 [a] [7]). In their amended complaint, the plaintiffs allege that Travelers is liable to them for an amount not less than $2,500,000 as a result of Blitman's failure "to perform all the undertakings, covenants, terms, conditions and agreements of the Blitman Contract". Thus, any liability that might be imposed upon Travelers in the main action would be based entirely upon principles of contract, rather than of tort. Neither Travelers itself, nor the principal for whose default it is being called upon to answer (Blitman), is charged in the amended complaint with any tortious act.

In the six causes of action set forth in its amended third-party complaint, Travelers seeks what it terms as "indemnification" from Alumni Plumbing and Heating Corp. (hereinafter Alumni), Jaffie, Loxcreen, Craft Roofing and Waterproofing, Inc. (hereinafter Craft) and National (the latter as surety for Mopal). It is alleged that Alumni failed to properly perform its piping and plumbing subcontract, that Jaffie failed properly to perform its heating and ventilating subcontract, that Mopal (National's principal) failed properly to perform its masonry and brickwork subcontract, and that Craft failed properly to perform its roofing and sealing work subcontract. "Indemnification" is sought on the theory that if Travelers is held liable to the plaintiffs on account of Blitman's failure to perform the terms of its general contract, then Blitman would be entitled to indemnification from each of the subcontractors

to the extent that their respective breaches of contract caused the plaintiffs' economic losses. If, for example, the plaintiffs were found to be entitled to $10,000 in damages due to faulty window work, Travelers argues that Blitman would be entitled to judgment over against the window subcontractor (Loxcreen) in the sum of $10,000.

In general, a defendant whose liability to an injured plaintiff is merely secondary or vicarious is entitled to common-law indemnification from the actual wrongdoer who by actual misconduct caused the plaintiff's injuries, and whose liability to the plaintiff is therefore primary *(see generally, Mauro v McCrindle,* 70 AD2d 77, *affd* 52 NY2d 719; Restatement of Restitution § 76). The case law is replete with instances in which appellate courts have struggled to define exactly what sort of misconduct may be considered "passive" and what sort of liability may thus be considered "secondary", so as to give rise to a right of common-law indemnification against a party whose misconduct was "active" and whose liability was thus "primary" *(see, e.g., City of New York v Kalikow Realty Co.,* 71 NY2d 957 [municipality held liable for injuries caused by defective sidewalk entitled to indemnification from abutting landowner which had undertaken to repair sidewalk]; *Rosado v Proctor & Schwartz,* 66 NY2d 21 [manufacturer of defective product not entitled to indemnification from purchaser of product which breached contract to install safety devices, where the plaintiff's accident was caused by absence of such safety devices]; *Kelly v Diesel Constr. Div.,* 35 NY2d 1 [general contractor liable without fault pursuant to statute entitled to indemnification from subcontractor whose actual fault caused injury to the plaintiff]; *Rogers v Dorchester Assocs.,* 32 NY2d 553 [landlord liable to the plaintiff because of dangerous condition on premises entitled to indemnification from elevator maintenance contractor]; *but cf., Guzman v Haven Plaza Hous. Dev. Fund Co.,* 69 NY2d 559 [landlord liable to the the plaintiff because of dangerous condition on premises not entitled to indemnification from tenant which had covenanted to keep premises in repair]; *Harrington v 615 W. Corp.,* 2 NY2d 476 [landowner liable to the plaintiff for dangerous condition on premises not entitled to indemnification from contractor who created dangerous condition where landowner was held liable for failure to warn the plaintiff of existence of that condition]; *see also, Bush Term. Bldgs. Co. v Luckenbach S. S. Co.,* 11 AD2d 220, *revd on other grounds* 9 NY2d 426 [and cases cited therein]). The generally recognized rule of tort law

with respect to common-law indemnification is that a general contractor who has been held liable to an injured plaintiff, but whose misconduct was purely "passive", may recover judgment over against a subcontractor whose misconduct was active *(see, Schwartz v Merola Bros. Constr. Corp.,* 290 NY 145, 155-156; *Dunn v Uvalde Asphalt Paving Co.,* 175 NY 214; *Hipius v City of Yonkers,* 22 AD2d 945, 946; *Crawford v Blitman Constr. Corp.,* 1 AD2d 398, 399-400; *Phoenix Bridge Co. v Creem,* 102 App Div 354, *affd* 185 NY 580; 23 NY Jur 2d, Contribution, Indemnity, and Subrogation, § 64, at 111-112).

■ Although Travelers argues that its third-party causes of action are based on principles of common-law indemnification, it is perhaps more accurate to view these causes of action simply as sounding in breach of contract. A general rule of contract law states that a general contractor is permitted to recover from a subcontractor whatever damages it might have incurred as a result of a breach of the subcontract. Where a subcontractor on a construction project defaults in performing its obligations pursuant to its subcontract, it generally will be held "bound to indemnify [the general contractor] against any damage he might suffer under his contract with [the owner]" *(Murdock v Jones,* 3 App Div 221, 224; *see also, Booth v Spuyten Duyvil Rolling Mill Co.,* 60 NY 487; *Heffernan v General Bronze Corp.,* 244 App Div 517, 519-520; *Meyer v Haven,* 70 App Div 529, 537; 10 Fuchsberg, Encyclopedia of New York Law, Damages, § 571). "Where a contractor sublets a part of the work to be done in the erection of a building or other structure, he may recover for the failure of the subcontractor to perform his contract all the damages resulting therefrom and which may reasonably be supposed to have been within the contemplation of the parties" (1 Clark, New York Law of Damages § 335, at 563, citing *Meyer v Haven, supra).*

Pursuant to this general rule of contract law, the various third-party defendants may ultimately prove to be liable to Travelers for all or part of what Travelers may ultimately be found to owe the plaintiffs on account of deficiencies in the completion of the general contract. Thus, their impleader is authorized pursuant to the terms of CPLR 1007. This result accords with logic, since it stands to reason that a general contractor who delegates a particular aspect of its contract to a subcontractor, and who is liable for damages solely on account of the subcontractor's failure to perform, should be permitted to shift 100% of its liability to the subcontractor.

By the same token, if a general contractor is liable for damages on account of the failure of two or more subcontractors to perform their subcontracts, there should be a right of recovery over against each subcontractor to the extent that each subcontractor's default caused the economic losses suffered by the plaintiff (see, *City of Rochester v Holmsten Ice Rinks,* — AD2d — [4th Dept, Nov. 15, 1989] [recognizing third-party claim of general contractor against subcontractor where general contractor's only liability to owner is contractual]; cf., *SSDW Co. v Feldman-Misthopoulos Assocs.,* 151 AD2d 293).

The foregoing rules were not altered by the holding of *Board of Educ. v Sargent, Webster, Crenshaw & Folley* (125 AD2d 27, *affd* 71 NY2d 21, *later appeal* 146 AD2d 190). In that case, it was held that two prime contractors, each of whom were liable to the owner of a construction project based on independent breaches of their respective contracts, could not seek to apportion liability between themselves based upon principles of contribution. The case did not involve the delegation by a general contractor of some of its contractual obligations, and thus did not change the prevailing rule that, if the subcontractor in such a case defaults on its obligations, it will be answerable to the general contractor for whatever damages foreseeably ensue. Furthermore, the *Board of Educ.* case did not alter the rules governing common-law indemnification; the case was concerned solely with the scope of contribution as defined in CPLR 1401 *et seq.*

Travelers has stated valid causes of action against each of the subcontractors (or against National, as surety for a subcontractor) based on allegations that these subcontractors (or National's principal) breached their respective contracts. These causes of action may be advanced in a third-party complaint (see, CPLR 1007).

## IV

There were several additional arguments raised by various third-party defendants in support of their respective motions to dismiss which were not addressed by the Supreme Court, and which are not raised in any of the respondents' briefs as alternative grounds for affirmance of the order under review. There is some authority for the proposition that this court may nevertheless consider these additional arguments, since they were raised in the court of original instance, in order to determine whether any one of them provides a basis upon

which to affirm the order insofar as appealed from *(see, Roseman v Fidelity & Deposit Co.,* 148 Misc 132, *supra;* 10 Carmody-Wait 2d, NY Prac § 70:423).

▮ Although this court might have the power to consider arguments which were advanced in the court of original instance, but which are not expressly advanced on appeal, for the purposes of affirming the order or judgment appealed from, we do not consider it our duty to do so in every case. To do so would, in some cases, be extremely burdensome. In the present case, for example, the motion of third-party defendant Jaffie included a branch based on allegations of lack of personal jurisdiction (CPLR 3211 [a] [8]), the motions of third-party defendants Jaffie and Loxcreen included branches based on the affirmative defense of release, and the motion of third-party defendant Craft included a branch based on a Statute of Limitations defense. The Supreme Court did not address these branches of the various motions, and since these arguments have not been expressly raised on appeal, we are reluctant to address them now *(see generally, Roldan v Allstate Ins. Co.,* 149 AD2d 20, 39; *Jemison v Crichlow,* 139 AD2d 332, 343, *affd* 74 NY2d 726). Under the particular circumstances of this case, we believe that the preferable procedure is to remit the matter to the Supreme Court so as to permit it to rule upon those branches of the various motions which have not yet been addressed, including those branches of the motions which were to sever the third-party action.

Accordingly, the order under review is reversed insofar as appealed from, on the law, with one bill of costs, those branches of the motions of the third-party defendants which were to dismiss the amended third-party complaint based upon lack of standing, failure to state a cause of action, and the terms of National's bond are denied, and matter is remitted to the Supreme Court, Kings County, for a determination of the remaining branches of the motions.

RUBIN, HARWOOD and BALLETTA, JJ., concur.

Ordered that the order is reversed insofar as appealed from, on the law, with one bill of costs, those branches of the motions of the third-party defendants which were to dismiss the amended third-party complaint based upon lack of stand-

ing, failure to state a cause of action, and the terms of the bond of National Bonding and Accident Insurance Company are denied, and the matter is remitted to the Supreme Court, Kings County, for a determination of the remaining branches of the motions.