*447 OPINION OF THE COURT
Harold L. Galloway, J.
Third-party defendant John P. Bell & Sons, Inc. (hereinafter Bell) brings this motion (1) to dismiss all four causes of action in the third-party complaint for failure to state a cause of action, and (2) to dismiss the first two causes of action in said complaint because of the Statute of Limitations. For the reasons set forth below the motion is denied.
THE FACTS
Many of the underlying facts relevant herein are not disputed. In 1976 the County of Monroe solicited bids for two contracts relevant to the case at bar, namely contract C for process equipment work and contract D for plumbing work, both as part of the Monroe County Resource Recovery Facility project (project). Bids for contracts C and D were submitted in July of 1976. John B. Pike & Son, Inc. (Pike) was determined to be the low bidder for contract C, and Bell was determined to be the low bidder for contract D. Contract C is "dated” September 16, 1976, though the contract was not actually executed until October 14, 1976. According to an unsigned draft joint venture agreement "dated” October 1, 1976, it appears that Pike and Bell may have been negotiating a joint venture agreement so that they could perform both contracts C and D together even before contract C was executed on October 14, 1976. On October 4, 1976, in pursuance of the requirements for performing contract C, and before contract C was executed, Pike (not Bell) signed a performance bond with Federal Insurance Company, General Reinsurance Corporation and INA Reinsurance Company. (These sureties, together with Cigna Reinsurance Company, a successor-in-interest to INA Reinsurance Company, are hereafter referred to as Federal.) After Pike executed the bond, as indicated above, contract C was actually executed by Pike and the County on October 14, 1976. The very next day, October 15, 1976, was the express "effective date” of the Joint Venture Agreement (JVA) between Pike and Bell executed on November 16, 1976. The JVA additionally says the joint venture would "commence operations” on November 1, 1976.
This time sequence raises an important disputed issue, i.e., when did the joint venture come into existence? Following the chronology of document execution, Bell says the bond was signed, then contract C was signed, then the joint venture was *448 formed. However, Federal’s complaint alleges that the joint venture existed before the JVA was signed on November 16, 1976 (eff Oct. 15, 1976), before contract C was signed on October 14, 1976, and apparently even before the bond was signed on October 4, 1976. As an alternative position, Federal alleges that Bell ratified the bond obtained by Pike.
The sequence of events after the formation of the joint venture is not disputed. On November 18, 1976, the joint venture requested that the County assign contracts C and D to the joint venture officially. However, the County refused. Bell, by letter dated June 13, 1978, again asked for such an assignment. Again the County did not agree. Almost five years later, on March 14, 1983, contract C with Pike was terminated. On February 9, 1989, almost six years after termination and only 23 days before the Statute of Limitations would have run out, the County sued Pike and Federal, claiming Pike defaulted with respect to its performance of contract C. Pike had become insolvent and this led to the third-party action by Federal against the joint venture and Bell alone. This third-party action was sued out in 1990, after the six-year period mentioned above had expired.
Some details of the JVA itself are noteworthy. The JVA recognizes that Pike, after a separate bid of $15,390,000 on contract C, and Bell, after a separate bid of $1,468,000 on contract D, were awarded those contracts. The joint venture agreement sets forth the format of the joint venture on a page resembling a flow chart, with separate columns of comments related to the Pike and Bell contracts respectively merging ultimately into one "subcontract”, consisting of "Contract C & D”, and totaling $16,858,000. The column of information with regard to Pike says, "Contract C Signed Directly with the Owner with Bell Concurrence” while the column with respect to Bell similarly says "Contract D Signed Directly with the Owner with Pike Concurrence”. (As noted above, the JVA was made effective only one day after contract C was signed.) The Pike column also says "Bonds to Owner[ — JPremium Reimbursable by Joint Venture” while the Bell column says "Bonds to Owners[ — ]Premium Reimbursable by Joint Venture”. The Joint Venture Agreement expressly provided that the "obligations [of the joint venturers] under the Subcontract shall be joint and several. ” It provides:
"The interests of the parties hereto in and to the Subcontract and in any and all property and equipment acquired in connection with the performance thereof and in and to any *449 and all monies which may be derived from the performance thereof and the obligations and liabilities of each of the parties hereto as among themselves in connection with the Subcontract and with respect to any and all liabilities in connection therewith, shall be in the following proportions:
"John P. Bell & Sons, Inc. — 40%
"John B. Pike & Son, Inc. — 60%
"Each party does hereby indemnify the other against any loss or liability exceeding the proportion herein above stated by reason of any payments required to be made in and about the performance of the Subcontract.”
The JVA also provides that the cost to the parties of the venture shall include the cost of bonds. It says that in the event of the bankruptcy or insolvency of either Bell or Pike, "the insolvent party shall remain liable for its share of any losses and shall be entitled to receive its share of profits”.
In this case there is no written subcontract by which Pike contracted with the joint venture in order to have the joint venture perform contract C. Similarly, there is no written subcontract by which Bell contracted with the joint venture in order to have it perform contract D. There is only the JVA which is between Pike and Bell and clearly indicates the joint venture will perform contracts C and D, i.e., the work which it expressly identifies as the "subcontract”. The JVA sets forth Pike’s and Bell’s respective rights and obligations with respect to the "subcontract.”
THE COMPLAINT

Indemnity Causes of Action

The first and second causes of action are based on the equitable principle of implied indemnity. (McDermott v City of New York, 50 NY2d 211.) Federal, as subrogee of Pike, is alleging that the joint venture, and Bell separately, should bear complete responsibility for the loss, if any, which it may incur in the main action. In McDermott v City of New York (supra, at 216-217), the Court explained indemnity as follows:
"This court has often pointed to the ’fundamental distinction between contribution and indemnity. The right to contribution is not founded on nor does it arise from contract and only ratable or proportional reimbursement is sought in an action for contribution * * * The right to indemnity, as distin *450 guished from contribution, is not dependent upon the legislative will. It springs from a contract, express or implied, and full, not partial reimbursement is sought’ (McFall v Compagnie Maritime Beige [Lloyd Royal], S.A., 304 NY 314 * * *).
"Conceptually, implied indemnification finds its roots in the principles of equity. It is nothing short of simple fairness to recognize that '[a] person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity’ (Restatement, Restitution, § 76). To prevent unjust enrichment, courts have assumed the duty of placing the obligation where in equity it belongs * * * Thus, the rule developed that '[w]here payment by one person is compelled, which another should have made * * * a contract to reimburse or indemnify is implied by law’ ”.
The first cause of action in the third-party complaint is captioned as being against both the joint venture and Bell, but is drafted as if it is only against the joint venture. It has language indicating it is a subrogation and indemnification cause of action based on the joint venture failing to properly perform the obligations imposed on Pike by contract C. While Bell indicates this cause of action (together with the second cause of action) may be a breach of contract cause of action subject to dismissal because of the six-year Statute of Limitations, Federal in its memorandum characterizes this as an indemnification cause of action against the joint venture, and accordingly, it will be treated as such for purposes of this decision. No cause of action for breach of contract will be deemed to have been alleged. Furthermore, it is agreed that Federal is subrogated to the rights of Pike (a defendant in the main action) against the joint venture.
The second cause of action incorporates the first cause of action but is specifically against Bell, and claims Bell is "jointly and severally” liable for the obligations of the joint venture, and that accordingly Bell may be liable to the sureties for all or part of any recovery made by the County against the sureties. Again, Federal in its memorandum characterizes this as an indemnification cause of action, and it will be treated as such, not as a breach of contract cause of action.

Bond Causes of Action

The third and fourth causes of action charge an independent right of Federal arising out of a performance bond *451 allegedly allowing Federal to sue Bell directly, even though Bell did not sign the bond. It is agreed that Federal could make a claim against Pike once it makes payment on behalf of Pike in the main action. The question is whether it can make a claim directly against Bell as alleged in the third-party complaint if it is required to make payment in the main action. It should be remembered that the JVA was neither executed nor effective by its terms when the bond was signed.
The third cause of action is just against Bell, claiming Bell is obligated to indemnify Federal on any loss it sustains under the performance bond because of the circumstances in which the bond was obtained, submitted to the County, paid for, and in which contract C was performed, which circumstances had allegedly given Bell the direct benefit of the bond. Federal considers this an argument that Bell is liable "effectively” as a principal on the performance bond. This appears to be a third-party beneficiary theory. It is premised either on Bell and Pike agreeing to the joint venture arrangement before obtaining the bond, or on Bell agreeing to the JVA in such a manner that it can be directly liable to Federal.
The fourth cause of action is also just against Bell. It seems to assume that the joint venture was formed before the bond was signed and claims that in securing the performance bond, delivering it to the County and executing contract C, Pike acted with knowledge and consent of Bell (or alternatively with the ratification of Bell), as Bell’s agent, and thus Bell must indemnify Federal against any loss on the bond. Put another way, this cause of action appears to allege that Pike was the agent of Bell and that Bell is liable on the bond as a principal of Pike. While Bell has submitted an officer’s affidavit indicating that the proposition that Bell as principal could "control” Pike as agent is not only not true, but that Pike’s principals would find it ridiculous, this affidavit is argumentative and not relevant to a motion to dismiss. Furthermore, at Special Term this principal/agent issue was argued in partnership terms, and of course, a partnership is an agency relationship going in both directions (even though one partner may appear more dominant than others).
DISCUSSION

Statute of Limitations

The Statute of Limitations basis for the motion to *452 dismiss must fail. The Statute of Limitations argument assumes that the first and second causes of action are for breach of contract (CPLR 213). As clarified by Federal’s memorandum, they are not. They are in indemnity, and for purposes of this lawsuit no cause of action for breach of contract shall be deemed to be stated by either the first or second cause of action in the third-party complaint. A cause of action for indemnification accrues when judgment is entered or payment is made on the underlying claim, as argued by Federal (e.g., McDermott v City of New York, 50 NY2d 211, 216, supra). This makes sense because it is not reasonable to expect B to sue C in indemnity before B is sued by A, giving rise to the need for indemnity from C. Thus, since Federal does not intend the first and second causes of action to be viewed as contract causes of action, it must be found that the Statute of Limitations has not even begun running on Federal’s first and second causes of action, and the dismissal motion, to the extent it is based on the Statute of Limitations, must fail.
In making its Statute of Limitations argument, Bell relies primarily on the case Seven Sixty Travel v American Motorists Ins. Co. (98 Misc 2d 509, affd 73 AD2d 761). However, that case is significantly different. As a rule, a surety is subrogated to the rights of both the party it pays and the party on whose behalf it makes the payments. In Seven Sixty Travel, involving an insurance policy (not a performance bond), the subrogation involved was that of the insurance company to the rights of the plaintiff in the main action where the insurance company had no contractual relationship with the tour company that actually wronged the plaintiff; and that tour company had no rights against anyone else to which the surety could be subrogated. The insurance company simply sought to recover from the party which caused the loss to its insured. Thus, it had no better rights than the plaintiff insured against the third-party defendant, and the third-party action was not one for implied indemnification, but was simply derivative, arising from subrogation. Consequently, the insurance company had to sue within the six-year period that plaintiff itself could have used to sue the third-party defendant wrongdoer directly.
In the case at bar, if Federal has to pay the plaintiff, Federal clearly is entitled to recover against Pike because of their contractual relationship, but then Pike could be entitled to indemnity from the joint venture which may be actually responsible for the loss because it contracted with Pike to do the entire job. This extension of the right to recover further *453 down the chain of responsibility for the loss is not involved in Seven Sixty Travel (supra). Thus, the third-party action at bar is for indemnification against the joint venture and Pike as a joint venturer, while the Seven Sixty Travel case was not for indemnity. It was simply an insurer’s claim by subrogation, derivative from the insured’s claim and subject to the same Statute of Limitations as though the third-party cause of action were sued upon by the insured directly in the main action. In contrast, in the case at bar, the County had no cause of action to assert directly against the joint venture or joint venturers. Thus the Statute of Limitations ruling in Seven Sixty Travel does not apply here, and that case does not establish that this third-party action is simply a breach of contract claim.
Even if there had been a written subcontract between Pike and the joint venture so that Federal would have claimed that the first and second causes of action in its third-party complaint were based on breach of that express contract, so that it was pursuing express contractual indemnity, such cause of action for breach of contract still involving indemnity would have accrued when and if damages were awarded against Pike and in favor of the County of Monore in the main action. In essence, for purposes of Statutes of Limitations, the County of Monroe was damaged when the Resource Recovery Facility would not work, but Pike would not be damaged unless and until the County got a judgment against it. If, instead, it was the rule that Pike’s cause of action against a subcontractor were deemed to have accrued when the County’s cause of action against it accrued, the judicial system could become clogged by anticipatory lawsuits based on the principle of "sue it or lose it.” That would be a great detriment to both the courts and businesses. With indemnity, fairness requires that the party legally responsible for a loss should be able to pass that loss down to the party directly responsible. Thus, it is appropriate that indemnity causes of action accrue when the loss is legally established and not before.
Failure to State Cause of Action — First Cause of Action
In the indemnification causes of action, Federal, through subrogation, has the same rights Pike as general contractor would have against the joint venture (first cause of action) and Bell (second cause of action) if the County were to recover against Pike. Thus, Federal, as subrogee, is attempting to *454 establish Pike’s claim against the joint venture and Bell. The situation presents a classic general contractor/subcontractor indemnity claim, except for the fact that the subcontractor is a joint venture consisting of the general contractor and yet another general contractor. It is agreed that, "The right of one party to shift the entire loss to another — indemnification— may be based upon an express contract or an implied obligation” (Bellevue S. Assocs. v HRH Constr. Corp, 78 NY2d 282, 296). In the case at bar, despite the express indemnity language of the JVA, both Federal and Bell (and the joint venture) argue that only implied indemnity is at issue because the JVA is not relevant to these indemnity causes of action in which Federal as subrogee of Pike as general contractor (not as a joint venturer) is suing the joint venture (first cause of action) and one of the joint venturers (second cause of action).
As Federal argues, implied indemnity arises in two different circumstance — one based on contractual obligations of one party undertaken by another (i.e., indemnity implied in fact), and the second based on the relationship and relative fault of the parties (indemnity implied in law). (See, e.g., Bellevue S. Assocs. v HRH Constr. Corp., supra; Board of Educ. v Sargent, Webster, Crenshaw & Folley, 71 NY2d 21; McDermott v City of New York, 50 NY2d 211, supra; Menorah Nursing Home v Zukov, 153 AD2d 13.) The implied indemnity based on contractual obligations is common in construction projects (e.g., Menorah Nursing Home v Zukov, supra). In such cases a general contractor is able to shift the legal responsibility for defective work to the subcontractor who actually agreed to do the work through a right of recovery over against the subcontractor. Thus, although the subcontract between Pike and the joint venture to actually perform contract C is not written, Pike has an implied right of indemnification against the joint venture based on that unwritten subcontract, which is acknowledged to exist (per the JVA), unless something unique about this case prevents the application of this general rule.
In this regard, however, Bell has argued that Pike cannot "sue itself’ in indemnity since it, as a coventurer, is responsible to some degree for the wrongdoing, if any, and that that is exactly what is being done when Federal, standing in the shoes of Pike, sues a joint venture comprised of Pike and Bell. Because indemnity is a 100% matter, this raises an interesting issue. Bell did not find any case directly on point with the unusual facts found here, where a general contractor contracted an entire project to a subcontractor which is a joint *455 venture between the general and another. It should be noted that the joint venture entity is not simply a sum of the two partners, but an entity organized uniquely to do the specific task at hand and consisting of parts of both partners, and identifying certain persons to do certain tasks.
While Bell argues that it is a well-established principle that a partnership is not a separate entity distinct from the persons who compose it, citing Williams v Hartshorn (296 NY 49), and Chemical Bank v Ashenburg (94 Misc 2d 64, 67), neither of these cases is analogous factually to the case at bar so as to require the first cause of action to fail because Federal/Pike is suing itself. Furthermore, Matter of Schwartz-man (262 App Div 635, 636, affd 288 NY 568) states that "for many purposes a partnership is regarded by the courts as a separate entity”, and a partnership is regarded as a legal entity for pleading purposes (CPLR 1025). There being an implied contractual basis for indemnity here (contractor to subcontractor), it is not a bar to recovery in indemnity that Pike is a partner in the third-party defendant joint venture and probably in that sense partly responsible for any liabilities. (This can be worked out in a fourth-party action between the coventurers, which presumably will be governed by the JVA.)
As a matter of common sense, if Pike can contract with itself by contracting with a joint venture in which it is a coventurer, as it has done, it must also be able to sue itself by suing the same joint venture. (Cf., Bellevue S. Assocs. v HRH Constr. Corp., 78 NY2d 282, supra [reversing the Appellate Division, and holding that a 50% owner/general contractor of a corporate subcontractor was allowed to sue the subcontractor on a contractual implied warranty indemnity theory, even though the 50% owner/general contractor was not an innocent party].) Negligence-based implied indemnity (not at issue here) and contract-based implied indemnity have different elements. Innocence, which is relevant to a negligence-based indemnity claim, is not necessary for a contract-based implied indemnity claim (Bellevue S. Assocs. v HRH Constr. Corp., supra; First Bible Baptist Church v Gates-Chili Cent. School Hist, 172 AD2d 1057).
Here Federal as subrogee of Pike is suing another entity, albeit related, based on implied contractual indemnification. Pike, per se, did not even attempt to perform any part of the contract. It contracted to have the joint venture perform contract C entirely. The joint venture did indeed perform the *456 contract (or perhaps, attempt to perform it). It would make no sense to say that Pike cannot sue the joint venture with whom it subcontracted if this were a cause of action for breach of that contract, and it would similarly be unworkable to refuse to permit a suit in indemnity based upon the general contractor/subcontractor relationship and the potential liability from the main action. Accordingly, the first cause of action does state a cause of action and will not be dismissed.*
Failure to State a Cause of Action — Second Cause of Action
The second cause of action is by Federal as subrogee of Pike for indemnification by Bell as a party jointly and severally liable for any damages the County is awarded as against Pike. Federal apparently sees this cause of action as only a slight variation on the first cause of action. This cause of action also will not be dismissed.
Ultimately, Bell may have some responsibility for improper performance of the subcontract, as may Pike. It has long been held that joint ventures are partnerships limited in scope and duration and that the legal consequences of a joint venture are equivalent to those of a partnership. (E.g., Meinhard v Salmon, 249 NY 458.) As a general rule, "[a]s agents for each other, partners and joint venturers are jointly and severally liable to third parties for 'any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership’. (Partnership Law §§ 24, 26 [1]; see also, Royal Bank & Trust Co. v Weintraub, Gold & Alper, 68 NY2d 124; Pedersen v Manitowoc Co., [25 NY2d 412])” (Gramercy Equities Corp. v Dumont, 72 NY2d 560, 565-566). Furthermore, Gramercy (supra, at 566) also provides, "Although the public interest requires that the partnership or even innocent partners be held answerable to third parties for unlawful actions of their agents apparently taken on their behalf * * * there is no comparable interest in imposing liability on innocent partners when the suit is between the partners themselves”. The case further holds that the Partnership Law requires indemnification between partners only for liabilities incurred in the ordinary and proper conduct or partnership business, subject to any agreement between the partners.
*457 If Pike were merely a third party with respect to the joint venture, there is no question but that a cause of action by Federal as subrogee of Pike for joint and several liability against Bell as one of the joint venturers contracting to do work for Pike would be valid. Here, however, Pike is the other joint venturer, who like Bell would be jointly and severally liable under the general rule to third parties. The question raised is why should Bell be jointly and severally liable to Pike, when the two have the JVA saying they are both jointly and severally liable to third parties and providing how they shall split the joint venture profits, losses and liabilities. However, at this point in the proceedings neither Federal, as subrogee of Pike, nor Bell is arguing that the second cause of action involves a claim made on behalf of Pike as a member of the joint venture. Accordingly, neither argues that the JVA language concerning a 60/40 split of profits, losses and liabilities between Pike and Bell is applicable. Instead, Federal argues that Federal, as subrogee of Pike as general contractor, has the right to shift 100% of Pike’s potential liability to the County down to Pike’s subcontractor, the joint venture (or to Bell as a joint venturer jointly and severally liable to third parties). In essence, Federal is saying that Pike as a general contractor is a third party to whom Bell as a joint venturer could be jointly and severally liable — the general contractor/ subcontractor relationship creates an independent duty beyond the duty of Pike and Bell to each other as joint venturers. Federal submits that the rights of the joint venturers between themselves would be relevant in a fourth-party action by Bell against Pike in its capacity as joint venturer, seeking to hold Pike liable under the JVA for 60% of whatever amount Bell is compelled to pay. (It should be noted that the JVA provides for a 60/40 split of liabilities as well as profits and losses, and thus Bell need not pay before it is entitled to indemnity. [McCabe v Queensboro Farm Prods., 22 NY2d 204.])
Bell, while arguing the second cause of action should be dismissed, agrees that Federal, as subrogee of Pike, is in the legal position equivalent to a third party. The basis for Bell’s dismissal argument is that there is no contractual or implied right of indemnity under the facts here, that the cause of action is for breach of contract, and that the Statute of Limitations for contract actions has run. These arguments have already been rejected for reasons set forth above, and because of the agreed posture of this motion the JVA 60/40 language does not eliminate joint and several liability on this *458 third-party cause of action. Thus, the third-party complaint’s second cause of action will not be dismissed.

Third and Fourth Causes of Action

These two causes of action are by Federal directly against Bell, not as subrogee. The third cause of action purports to state a cause of action against Bell for liability as a principal on the bond. The fourth cause of action purports to state a cause of action for Bell’s liability as a principal of Pike as agent. In other words, because of the joint venture, Pike and Bell were partners and therefore both were agents of the other. Both causes of action are legally sufficient to withstand the motion to dismiss.
The third cause of action appears, as pleaded, to be dependent on the sequence of events proposed by Federal, in which the joint venture allegedly came into existence before the performance bond was obtained by Pike and before the JVA was signed. This sequence of events, whereby an unwritten joint venture agreement existed before the bond, is a factual allegation which may prove to be true or false, but for purposes of this motion addressed to the pleadings is accepted as true. If the joint venture existed when the bond was signed, of course Pike could bind Bell to the bond, just as one partner binds another routinely for legitimate partnership purposes. Indeed, in the old case of Chester v Dickerson (54 NY 1), the Court of Appeals allowed parol evidence to prove the existence of a partnership at a time before the written partnership agreement was signed. While such a finding may seem unlikely in this case, it cannot be altogether disregarded as a possibility, particularly when no case law holding such a finding is improper as a matter of law has been discovered, and there is no requirement that joint venture agreements be in writing. (Cf., Buchner v Pines Hotel, 58 NY2d 1019.)
However, Federal also allows for the possibility that a joint venture agreement executed after the bond was executed can be enough to hold Bell liable on the bond as a principal, citing Goerig v Continental Cas. Co. (167 F2d 930), a Ninth Circuit 1948 case which is not controlling here. The facts in Goerig are not identical to those in the case at bar but they do show that it is possible for joint venturers to be liable on a bond that was executed before they became joint venturers. Goerig involves joint venturers that joined the joint venture four days after the bond was obtained, and agreed to indemnify the *459 surety for defaults of the partnership. They signed a joint venture agreement with language that the bond was " ’to be treated as being executed and delivered in pursuance of this agreement of the Joint Venture’ ” (supra, at 932). A similar succeeding bond was also executed for another joint venture project. The court found that they were undisclosed principals and said ’’the undisclosed principals are actual parties to the contracts and liable thereon”. (Goerig v Continental Cas. Co., supra, at 932-933.)
While the JVA language in the case at bar is not as definitive as in Goerig (supra), there still are indications in the executed JVA language which tend to indicate Bell could be liable as an "undisclosed principal” on a bond signed before it became a joint venturer by signing the JVA. The written JVA itself says "Contract C Signed Directly with the Owner with Bell concurrence” and "Bond to Owner — Premium Reimbursable by Joint Venture.” (The prior draft had that same language.) The executed JVA also has language that the cost of the joint venture includes the bonds. Contract C was signed October 14, and the JVA’s express effective date is October 15, so the joint venture agreement language "with Bell Concurrence” at the time of signing of the contract C may indicate that the joint venture was in effect at least one day before the express effective date of the JVA, and perhaps even as early as October 4, when the bond was obtained. Indeed, the draft JVA says it was "made and entered” on October 1, 1976, i.e., three days before the bond was obtained, though this draft was not signed. If a party’s signature is not on a bond, there can still be a basis for finding implied consent to indemnify the surety (see, Carrols Equities Corp. v Villnave, 57 AD2d 1044, 1045). Thus, this case could prove to be similar to Chester (supra) or Goerig, and either situation would allow Bell to be directly liable on the bond just like a principal on the bond (i.e., Pike) who signs as such.
The fourth cause of action appears primarily to rely on the same sequence whereby the joint venture exists before the bond is obtained, but it also alleges ratification by Bell. In this cause of action Pike is alleged to be an agent of Bell. If we assume then that Bell and Pike are already partners (i.e., joint venturers) by the time Pike obtains the bond for contract C, then as a matter of partnership law, certainly one partner, i.e., joint venturer, could bind the other. Bell need not sign itself if Pike was its partner, i.e., agent, when Pike signed. *460 Similarly, Bell could ratify the action of Pike, though this particular possibility, though pleaded, has not been briefed.
Two final items should be noted, the first of which concerns Pike and Bell. Although Pike may have been a much larger corporation than Bell when they entered into the joint venture, as a matter of partnership law, both would have been agents of the other in joint venture matters. Obviously Pike had great respect for Bell, as reflected by the subcontract and JVA, even if Bell’s officers believe Pike’s officers would find it "ridiculous” to argue that Pike was an agent of Bell, and therefore "controlled” by Bell. Indeed, the agency implied by partnership is not at all laughable under the circumstances, and it is that kind of mutual two-way agency on which the fourth cause of action is predicated.
The other item concerns Federal’s assumption of Pike’s identity for purposes of certain claims herein. If, indeed Federal is to assume Pike’s identity in asserting the general contractor’s rights against the subcontractor, is not Federal also simultaneously assuming Pike’s identity as a coventurer of the subcontractor, thereby making the JVA applicable in determining the respective shares of joint venture liabilities allocable to each coventurer?

 Federal contends that a second basis for implied indemnification — an active/passive relationship — also exists in the first cause of action. However, because there is a contractual implied indemnity basis, this issue need not be reached.