### FUCHS v. SALADINO.

(Supreme Court, Appellate Division, First Department. July 13, 1909.)

1. CONTRACTS (§ 290*)—BUILDING CONTRACTS—ARCHITECTS' CERTIFICATES—WAIVER.

A provision of a building contract that payments should be made only on architects' certificates was waived by the owner's payment of installments and executing notes therefor, without requiring such certificates in so far as those installments were concerned.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1317; Dec. Dig. § 290.*]

2. APPEAL AND ERROR (§ 909*)—REVIEW—PRESUMPTIONS.

Where, in an action to foreclose a mechanic's lien, the referee made 26 items of deduction, varying in amounts from $2 to $1,600, and plaintiff did not appeal, it would be assumed on defendant's appeal that the deductions were made for the contractor's failure to fully or substantially perform the contract.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3675; Dec. Dig. § 909.*]

3. CONTRACTS (§ 295*)—SUBSTANTIAL PERFORMANCE.

Neither a complete nor a substantial performance of a building contract can be predicated on facts showing omissions, deviations, or defects amounting in value to at least 15 per cent. of the work.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1353; Dec. Dig. § 295.*]

---

4. CONTRACTS (§ 319\*)—BUILDING CONTRACTS—NONPERFORMANCE.

    A building contractor cannot recover on the contract where there have been deviations or omissions of a material nature, unless a sufficient excuse or waiver be pleaded and proved.

    [Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1493; Dec. Dig. § 319.\*]

5. CONTRACTS (§ 304\*)—BUILDING CONTRACTS—ACCEPTANCE OF WORK—POSSESSION.

    The owner of a building by taking possession does not thereby accept the work and become obligated to the contractor on his construction contract.

    [Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1459; Dec. Dig. § 304.\*]

6. CONTRACTS (§ 289\*)—BUILDING CONTRACTS—ARCHITECT'S CERTIFICATE.

    An architect's certificate was not arbitrarily or unreasonably withheld where the contractor's failure to perform amounted to 15 per cent. in value of the contract work.

    [Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1310; Dec Dig. § 289.\*]

7. CONTRACTS (§ 199\*)—BUILDING CONTRACTS—SPECIFICATIONS—CONSTRUCTION.

    Where one of the specifications for a building required French sheet glass in the front windows, and another specification provided that all glass to be used in the windows should be of the best clear American cylinder glass, the two should be construed together, and the contractor required to use clear American glass in all the windows except the front ones; and use of translucent glass was not a performance of the contract.

    [Ed. Note.—For other cases, see Contracts, Cent. Dig. § 888; Dec. Dig. § 199.\*]

Appeal from Judgment on Report of Referee.

Action by Gertrude Fuchs against Domenick Saladino. From a judgment foreclosing a mechanic's lien pursuant to a decision of a referee, defendant appeals. Reversed, and new trial granted.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

Alfred D. Lind, for appellant.
William R. Hill, for respondent.

LAUGHLIN, J. The mechanic's lien was filed by one Michael Fuchs, the plaintiff's assignor, against premises No. 381 Broome street, borough of Manhattan, N. Y., owned by the defendant. It was for work and labor performed and materials furnished pursuant to a contract in writing between the defendant, as party of the first part, and the plaintiff's assignor as party of the second part, made on the 16th day of August, 1905, by which the latter undertook to erect a seven-story building on the premises in question pursuant to drawings and specifications which were made a part of the agreement, and to do all of the work and furnish all of the materials, with the exception of "the installation of steam-heating apparatus and electric elevators for passenger and freight service, and all other electric work in said building," for the gross sum of $34,739. Plaintiff's assignor agreed to "perform the work, labor, and services under this contract in perfect accord and in connection with the other contractors who shall be employ-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ed to install the steam-heating apparatus and the electric elevator and other electric work," and to "facilitate such contractors to the full extent of his power in the prosecution and finishing of the work, labor and services agreed to be performed by them and the materials agreed to be furnished in connection therewith," and to "construct said building so that the steam-heating apparatus and elevators may be installed in the most expeditious and thorough manner." The building was to be completed on or before the 31st day of December, 1905, and it was expressly provided that time was to be of the essence of the contract. It was further provided that the contractor should forfeit and pay the sum of $25 as liquidated damages for every day he should be in default in completing the work within the time specified, and, on this point, it was further provided as follows:

"And the party of the second part shall not set up or allege to excuse or justify any such default the neglect or omission of any contractor or other person employed on the said premises, unless he can do so rightfully, and then only in case he shall have given written notice of such neglect or omission to the superintendent, and for as many days as may elapse between the delivery of such notice and the doing of the work stated in the notice to have been neglected or omitted. The time in which the workmen and mechanics on the building shall be engaged in a general strike shall be allowed in computing the time for finishing the building."

It was also further provided that the work should be done "to the full satisfaction" of Domenic Briganto, who is described in the contract both as superintendent and architect, "to be evidenced by his certificate" as therein provided; that, should any dispute arise "concerning the true construction of the plans, drawings, and specifications * * * or any part of either, the same shall be decided by the superintendent, and his decision shall be final"; that the superintendent "may condemn and reject any of the work or materials performed or furnished under this contract, and require the same to be taken down and removed from the premises by or at the expense of the party of the second part and may also direct the time of the doing of the several portions of the work"; that no certificate given by the superintendent or payment made under the contract should be deemed an admission by the owner that the work or any part of it had been done in accordance with the contract in the event that the fact should be otherwise, to preclude an action against the contractor for a failure to furnish materials of a good and proper quality, or to perform work "in every particular in a substantial and workmanlike manner," or to faithfully perform the contract "in every respect." It was further expressly agreed by the contractor that the certificates to be furnished by him as provided in the contract should "be regarded and taken as a condition precedent" to his making or asserting any claim or demand for money due under the contract, and that the payment of any installment of money thereunder "shall not be taken or construed as a waiver of the contract with respect to the condition thereof required before any subsequent payment" shall become due or payable. With respect to the final payment the contract provided as follows:

"The last payment shall not be payable unless the superintendent shall certify in writing that this contract has been fully performed and the work finished, completed and perfected in every way and respect to his full satisfaction,

and that all damages and charges which should or may be paid by the party of the second part have been deducted from the said payment, and also a certificate from the party of the second part that all claims and demands for extra work and otherwise, of any kind or nature, in connection with this contract have been presented to the superintendent and are included in the said payment or payments."

By the express provisions of the contract, payments were to be made in 10 installments from time to time as the work progressed from stage to stage as therein specified. The first five installments were fully paid. The sixth and seventh installments were $4,000 each. They were settled by the payment of $2,000 in cash on each, and the promissory note of the owner for the remaining $2,000 payable in four months. These notes aggregating $4,000 and the eighth installment of $2,239, the ninth of $4,500, and the final installment of $4,500, together aggregating $15,239, have not been paid. The contractor performed extra work for which he has been allowed by the referee the sum of $140. The referee thus found that the balance unpaid on the contract, together with this extra work, was the sum of $15,379. It is alleged in the amended complaint that the plaintiff's assignor "duly fulfilled and performed all the conditions of said contract on his part to be performed" except as therein alleged. The only exceptions to this claim that the work had been fully performed in accordance with the requirements of the contract, and that the conditions of the contract had been duly kept and performed by the plaintiff's assignor, found in the amended complaint, are with respect to time of performance and to obtaining the certificate of the superintendent and architect.

Concerning the failure to perform within the time specified, it alleges excuses by which the completion of the work was delayed without fault on the part of the plaintiff's assignor until the 15th day of March, 1906; and with respect to the certificates it alleges that they were "unreasonably, unjustly, and unfairly" withheld and refused. No waiver of performance of any provision of the contract on the part of the defendant is alleged, nor is there any allegation that the plaintiff's assignor was prevented from performing any part of the work by any act on the part of the defendant or his agents or servants, with the exception of the provisions concerning the time of completion. Neither the plaintiff nor her assignor procured the certificates of the superintendent or architect for any part of the amount unpaid on the contract, as required by the contract. The procurement of certificates on the installments paid was waived by not being required; and doubtless the procurement of the certificate of the superintendent and architect with respect to that part of the sixth and seventh installments represented by the notes was waived, but no such waiver was pleaded. There is no evidence that the requirement of the contract with respect to the certificates concerning the other payments has been waived. At the close of the evidence and after a motion in behalf of the defendant for the dismissal of the complaint upon the ground, among others, that the plaintiff failed to establish the cause of action alleged, the record contains the following:

"Mr. Hill: The plaintiff asks leave to amend the amended complaint to conform to the proofs.

"The Referee: Motion granted. (Exception.)"

· It does not appear that any formal amendment was drafted or served pursuant to this leave of the court, and it is difficult to determine what was accomplished thereby or to see how it avails the plaintiff. The only claim made by the learned counsel for the plaintiff with respect to it is that, in effect, his amended complaint has been amended so as to allege substantial performance, instead of complete performance of the contract. Assuming, but without deciding, that the leave of the court thus granted had that effect, still I am of the opinion that the plaintiff is not entitled to recover. The referee has found that there should be deducted from the unpaid balance of the contract price and the value of the extra work the sum of $6,885.33 on account of the failure of the contractor to perform certain items of work as required by the contract, plans, and specifications as construed and interpreted by the superintendent and architect, and his interpretation is confirmed by the decision, in that the deduction is made from the contract price of the work on account thereof. The items on account of which this amount has been deducted aggregate 26, and they vary in amounts from $2 to $1,600. The respondent not having appealed, it must be assumed that these deductions were made on account of the failure of the contractor to fully or substantially perform the contract. It thus appears that he has failed to perform more than 19 per cent. and nearly 20 per cent. in value of the entire contract work. One item of $53.33, deducted on account of the failure of the contractor to procure accident insurance for the benefit of the defendant, should not be deducted in determining the percentage of work left undone. It is claimed by defendant that an item of $1,500 which the referee deducted was not deducted on account of the failure of the contractor to perform the work, but on account of a guaranty to the effect that the vault constructed under the sidewalk would be waterproof. Neither the contract nor the plans and specifications limited the contractor to any particular kind of waterproof construction. He agreed to construct the vault so that it would be watertight; and, even though this agreement may have constituted a guaranty, it would seem that the contract had not been performed. But, if this item were deducted, it would still leave $5,385.33 or about 15 per cent. in value of the work unperformed. The facts with respect to the ambiguity and indefiniteness in the plans and specifications and the circumstances under which there was a departure therefrom by the contractor induced the learned referee to find that many of the omissions and deviations in the performance of the contract work and defects therein were not willful, and he evidently was convinced that the equities were with the contractor, and he was doubtless quite liberal to the owner in fixing the value of the uncompleted work. Nevertheless, the plaintiff having acquiesced in the decision, we must assume that the deductions which were on contested items were made on account of the failure of her assignor to perform his contract obligations. Neither a complete nor a substantial performance can be predicated upon facts showing omissions, deviations, and defects of this magnitude, regardless of whether or not they constituted structural defects. Smith v. Brady, 17 N. Y. 173, 72 Am. Dec. 442; Rochkind v. Jacobson, 126 App. Div. 357, 110 N. Y. Supp. 583; Excelsior Terra Cotta Co. v. Harde, 90 App. Div.

4, 85 N. Y. Supp. 732; Van Orden v. MacRae, 121 App. Div. 143, 105 N. Y. Supp. 600, affirmed 193 N. Y. 635, 86 N. E. 1134; Easthampton L. & C. Co. v. Worthington, 186 N. Y. 407, 79 N. E. 323; Spence v. Ham, 163 N. Y. 220, 57 N. E. 412, 51 L. R. A. 238; Crouch v. Gutmann, 134 N. Y. 45, 31 N. E. 271, 30 Am. St. Rep. 608. Of the cases cited the one most favorable to the plaintiff is, I think, Crouch v. Gutmann, supra, which was decided by a bare majority of the Second Division of the Court of Appeals, and even there it would have cost only a little over 1 per cent. of the contract price of the work to complete it according to the contract. Contractors should understand that the obligation to perform a building contract is the same as the law imposes with respect to other contracts, and that there can be no recovery where there have been deviations or omissions of a material nature, unless a sufficient excuse or waiver be pleaded and proved, and that the rule with respect to allowing a deduction on account of small or immaterial items and a recovery as for a substantial performance will not be extended. Nor is there any force in the contention that the owner by taking possession of his own property accepts the work and becomes obligated to pay therefor.

It cannot be held that a superintendent and architect who refuses in the circumstances here disclosed to certify that the contractor has performed his contract obligations is guilty of arbitrarily or unreasonably withholding such certificate. The architect's certificate was a condition precedent to the right of the plaintiff to recover. We are of opinion that on the facts as found by the referee the judgment must be reversed, for it cannot be maintained that the contract was either completely or substantially performed, or that the plaintiff is excused from procuring the certificates.

We are also of opinion that the contractor failed to comply with the contract with respect to glass furnished for the windows in "gable walls on either side and rear." There is a special provision that these were to be of wire glass. This provision was complied with; but another was not. There was a special provision in the specifications requiring that French sheet glass should be used in the front windows. There was still another provision of the specifications requiring that all glass to be used in the windows should be of the "best clear American cylinder glass." This provision necessarily related to all of the windows other than the front windows, in which French glass was to be used, and it therefore embraced the windows in the gable walls on either side and in the rear. The undisputed evidence shows that the glass used in the windows in the gable walls and in the windows in the rear of the building was not clear, but was translucent. The learned referee with respect to this claim took the view that the glass admitted all the light necessary in view of the use to which the building was put. The attention of the contractor was drawn to this point before he put in the glass, and a sample of the kind of glass which the owner desired was presented to him and he was requested to use it. To this request he replied:

"It don't call in the specifications for wire glass going to be selected by the owner. Whatever the specification calls for you should have."

It would have cost about $2,647.75 to have used clear glass; but the contractor then proceeded on his own responsibility to use translucent glass, which cost only about one-fourth of that amount.

It follows, therefore, that the judgment should be reversed and a new trial granted, with costs to the appellant to abide the event. All concur.