**In re JOHN'S INSULATION, INC., Debtor.**

**JOHN'S INSULATION, INC., Plaintiff,**

**v.**

**HARTFORD ACCIDENT & INDEMNITY CO., Defendant.**

**Bankruptcy No. 194–20121–353.**
**Adversary No. 197–1405–353.**

United States Bankruptcy Court,
E.D. New York.

June 23, 1998.

Finkel Goldstein Berzow Rosenbloom & Nash, LLP, New York City by Harold S. Berzow, S. Stewart Smith, for Debtor.

Stim & Warmuth, P.C., Huntington, NY by Joseph D. Stim, for Creditor.

### DECISION ON MOTION TO DISMISS ADVERSARY PROCEEDING FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

JEROME FELLER, Bankruptcy Judge.

Defendant Hartford Accident and Indemnity Co. ("Hartford") moves to dismiss this adversary proceeding, brought in the Chapter 11 bankruptcy case of John's Insulation, Inc., for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ.P."), made applicable hereto by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure ("Fed. R. Bankr.

P."). The parties agree that New York law governs.

In its complaint, John's Insulation seeks an affirmative recovery of damages, as well as a disallowance of Hartford's general unsecured claim. After considering the complaint, the parties' memoranda either in support of or in opposition to the motion, and our own independent inquiry, we find that the complaint forwards no discernible legal basis for an affirmative claim of relief.[1] Although the complaint advances cognizable defenses to Hartford's unsecured claim, in the absence of an associated cognizable demand for relief brought pursuant to Fed. R. Bankr.P. 7001, the proper vehicle for such objections is by motion, as provided in Fed. R. Bankr.P. 3007. Accordingly, for the reasons hereafter discussed, the motion is granted and the instant adversary proceeding is dismissed.

### I. BACKGROUND

Hartford, as surety, issued a performance bond on behalf of John's Insulation, a construction company located in Long Island City, Queens, as a prerequisite for the award of a $3.5 million construction contract to provide labor and material for the installation of a heat recovery system for the New York City Department of Sanitation ("City"). The bond ensured completion of construction by binding Hartford to perform in the event of a default by John's Insulation. In order to obtain the performance bond, John's Insulation entered into a General Indemnity Agreement ("Indemnity Agreement") with Hartford, on or about May 20, 1985.[2] The Indemnity Agreement provided Hartford with a contractual right of indemnification should it incur any loss from completing the construction contract, pursuant to the perfor-

---

**1.** In addition, the Court has considered a general indemnity agreement, referred to in the complaint, and a prior related adversary proceeding between the parties. If a court relies on matters found outside the complaint it is required to convert the motion, under the guidelines of Fed. R.Civ.P. 12(c), into a motion for summary judgment. However, public documents—as well as certain other documents, such as contracts, that are referred to in a complaint—are an exception to this rule. *See Kramer v. Time Warner, Inc.,*

937 F.2d 767, 773–74 (2d Cir.1991). Because the Indemnity Agreement and the record of the prior adversary proceeding fall within the exception, it remains appropriate for this Court to render a decision pursuant to Fed.R.Civ.P. 12(b)(6).

**2.** Both parties acknowledge a typographical error in the complaint, which states the date of the Indemnity Agreement as May 20, 1986.

mance bond, after a default by John's Insulation.

Ultimately, John's Insulation was defaulted by the City, which retained a progress payment of approximately $400,000.00 for work completed by John's Insulation that was "in the pipeline" and awaiting final approval for disbursement. Subsequently, Hartford was called upon to finish the installation work. The City applied the retained progress payment, in addition to the unearned monies remaining under the contract, toward Hartford's completion of construction, which included employing engineers, lawyers, and replacement contractors. Upon approving the completed work, the City owed a final payment under the contract of $408,403.51.

John's Insulation, which had since filed a petition for relief under Chapter 11, initiated an adversary proceeding against both the City and Hartford, blocking Hartford's receipt of the final payment and claiming entitlement to those monies. Hartford, on the other hand, as completing surety, filed a general unsecured claim in the Chapter 11 case based on its indemnification rights, in the amount of $500,113.04. By stipulation entered into between the parties and so ordered by this Court, the $408,403.51 final payment was escrowed in an account jointly held by John's Insulation and Hartford through their respective attorneys. This initial adversary proceeding ended on the grant of a motion to dismiss without prejudice to the filing of a second adversary proceeding, solely against Hartford, to resolve the competing claims to the escrowed funds.

In its second complaint, the one presently before the Court, John's Insulation alleges that there were no disputes regarding any of the work that it had performed on the contract, which at the time of default was roughly 86% completed. After the default, the City requested the performance of extra work by the replacement contractors and the use of additional materials, both of which exceeded the specifications of the original contract. At times, the extra work included scrapping and rebuilding portions of the project previously completed by John's Insulation and approved by the City. However, Hartford failed to demand compensation for these extras. John's Insulation further alleges that Hartford failed to exercise proper care in reviewing and settling payments to the contractors, consulting engineers, and legal counsel that were hired, resulting in exorbitant and exaggerated payouts.

Relying on these factual allegations, the complaint advances three theories of recovery: breach of contract, negligence, and improper accounting. First, the Indemnity Agreement explicitly and impliedly required Hartford to complete the construction reasonably and in good faith. Hartford's breach of the Indemnity Agreement is evidenced by the performance of extra work without demanding adequate compensation and by honoring inflated billing requests. Next, Hartford was negligent in not properly overseeing the construction. Similar to the breach of contract claim, it knew or should have known that the extra work was beyond the terms of the contract and that work was being billed at exorbitant rates. Finally, John's Insulation claims that Hartford improperly accounted for the money it received and expended on the job, which resulted in the assessment of an overcharge on Hartford's indemnity claim.

As a remedy under the breach of contract and negligence causes of action, John's Insulation demands that Hartford's unsecured claim be disallowed. There is no basis for Hartford to seek indemnification because it has already been fully reimbursed for the reasonable costs and expenses of completing the construction. These two causes of action also demand judgment for the $408,403.51 escrowed by the City. John's Insulation claims that but for Hartford's negligence and/or breach of the Indemnity Agreement, the escrowed monies would represent a contract surplus. Therefore, the escrowed monies should be awarded free and clear of any claims of indemnity. Finally, John's Insulation seeks $538,769.00 under the improper accounting cause of action, claiming that it is owed an additional $130,366.00 in excess of the escrow account for monies that Hartford improperly overcharged.

Hartford counters with the instant motion to dismiss for failure to state a claim upon which relief can be granted. Regarding the

negligence cause of action, Hartford asserts that absent a violation of a legal duty independent of the contract, New York law does not support such claims. Under the breach of contract claim, neither party questions the fact that John's Insulation was defaulted on the contract with the City. Hartford asserts that, as the completing surety, it is subrogated to the rights of the City. Because John's Insulation as a defaulted party cannot affirmatively· seek a recovery of contract monies (including the retained monies that were in the so-called "pipeline") from the City, it similarly cannot demand those monies from Hartford as the City's subrogee. Thus, even though John's Insulation may use claims of bad faith as a shield to Hartford's claim for indemnification, it has no analogous right to wield a sword and assert that it is owed contract proceeds in the form of a surplus. Finally, to the extent that it states any cause of action at all, the improper accounting claim should be considered as merely a defense to claims of indemnification under the same reasoning as the breach of contract cause of action. This Court, in large measure, agrees.

## II. DISCUSSION

### A. Standard Governing a Rule 12(b)(6) Motion to Dismiss

■ Rule 12(b)(6) provides that a complaint will be dismissed "for failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). The purpose of a 12(b)(6) motion is to test the legal sufficiency of a complaint. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Therefore, the resolution of such a motion requires viewing a complaint in a light that accepts the truth of all material allegations and draws all reasonable inferences in favor of the plaintiff. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404 (1969). As such, a complaint need only meet the liberal requirement of " 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957) (quoting Fed.R.Civ.P. 8(a)(2)).

■ However, a complaint must be "well pleaded" and contain more than mere conclusory statements that a plaintiff has a valid claim of some type and is thus deserving of relief. *See· Chongris v. Board of Appeals*, 811 F.2d 36, 37 (1st Cir.), *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 765 (1987); *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir.1977). A court is neither required to accept as true "sweeping and unwarranted averments of fact," *Haynesworth v. Miller*, 820 F.2d 1245, 1254 (D.C.Cir.1987), nor " 'conclusions of law or unwarranted deductions,' " *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994), *cert. denied*, 513 U.S. 1079, 115 S.Ct. 728, 130 L.Ed.2d 632 (1995) (quoting 2A Moore's Federal Practice ¶ 12.08, at 2266–69 (2d ed.1984)). Dismissal is appropriate when "if as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989) (quoting *Hishon*, 467 U.S. at 73, 104 S.Ct. at 2232).

### B. The Breach of Contract Claim

■ Initially, it is quite ˙clear that John's Insulation has no right to sue the City for any contract proceeds. For over one hundred years, New York has recognized the "parent rule," whereby a party who defaults under a contract has no right to bring an action against the non-defaulting party to recover contract proceeds for part performance. *Lawrence v. Miller*, 86 N.Y. 131 (1881). "To allow a recovery of this money would be to sustain an action by a party on his own breach of his own contract, which the law does not allow." *Id.* at 140. The rule has been held "applicable to contracts generally, and has been applied to a wide variety of circumstances including the sale of goods, employment contracts for a fixed term, *construction contracts*, and installment land

sales." *Maxton Builders, Inc. v. Lo Galbo*, 68 N.Y.2d 373, 379, 502 N.E.2d 184, 187, 509 N.Y.S.2d 507, 510 (1986) (emphasis added).

■ The parent rule has been criticized on the ground that it produces a forfeiture, the amount of which "increases as performance proceeds, so that the penalty grows larger as the breach grows smaller," Arthur L. Corbin, *The Right of a Defaulting Vendee to the Restitution of Installments Paid*, 40 Yale L.J. 1013, 1029 (1931). Yet despite calls for application of the "modern rule," which permits a breaching party to recover any owed monies that remain after the non-breaching party recovers its actual damages, New York continues to follow the parent rule. *See Maxton Builders*, 68 N.Y.2d at 378–82, 502 N.E.2d at 187–89, 509 N.Y.S.2d at 510–12.[3] In the context of construction contracts, whether those sums are characterized as a surplus, a contract retainage, or monies previously earned but unpaid is immaterial. *See Triple M. Roofing Corp. v. Greater Jericho Corp.*, 43 A.D.2d 594, 349 N.Y.S.2d 771 (App. Div.1973) (holding that a defaulted subcontractor lost all right to recover for work already completed).

■ Similarly, John's Insulation has no right to recover contract proceeds from Hartford under general principles of subrogation. Seemingly, no issue could be as well-settled than a surety's right, after completing a contract upon the default of the principal, to the unpaid contract proceeds to reduce any loss or satisfy any costs incurred. *See*

*Henningsen v. United States Fidelity & Guar. Co.*, 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547 (1908); *Prairie State Nat. Bank v. United States*, 164 U.S. 227, 32 Ct.Cl. 614, 17 S.Ct. 142, 41 L.Ed. 412 (1896). As stated by the court in *National Shawmut Bank v. New Amsterdam Casualty Co.*, 411 F.2d 843 (1st Cir.1969),

the surety in cases like this undertakes duties which entitle it to step into three sets of shoes. When, on default of the contractor, it pays all the bills of the job to date and completes the job, it stands in the shoes of the contractor insofar as there are receivables due it; in the shoes of laborers and material men who have been paid by the surety—who may have had liens; and, not least, in the shoes of the [obligee], for whom the job was completed.

*Id.* at 845; *accord In re Dutcher Constr. Co.*, 298 F.2d 655, 656 (2d Cir.), *aff'd sub nom. Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962). The surety is thus subrogated to the rights of the principal, and has rights to the funds that are due and are to become due under a contract, including any undisbursed proceeds previously earned and any retainages held until contract completion. *Scarsdale Nat. Bank & Trust Co. v. United States Fidelity & Guar. Co.*, 264 N.Y. 159, 164, 190 N.E. 330, 332 (1934). Moreover, a surety is similarly subrogated to the rights of the obligee and may enforce the obligee's rights against the principal. *Menorah Nursing Home, Inc. v. Zukov*, 153 A.D.2d 13, 17, 548 N.Y.S.2d 702, 705

---

**3.** As applied to the construction industry, the harshness of the parent rule was somewhat meliorated by the seminal case of *Jacob & Youngs, Inc. v. Kent*, 230 N.Y. 239, 129 N.E. 889 (1921). In allowing a breaching contractor to recover for "substantial performance," Judge Benjamin Cardozo, writing for the court, stated that

[t]he courts never say that one who makes a contract fills the measure of his duty by less than full performance. They do say, however, that an omission, both trivial and innocent, will sometimes be atoned for by allowance of the resulting damage, and will not always be the breach of a condition to be followed by a forfeiture.

*Id.* 230 N.Y. at 241, 129 N.E. at 890.

Because partial performance will not suffice as grounds for recovery of a contract balance by a party who defaults, John's Insulation was not entitled to any proceeds of the contract held by

NYC at the time of default. Although not raised in its complaint, John's Insulation argues that the alleged 86% completion of the construction contract constitutes substantial performance. However, a default with 14% of the construction still awaiting completion does not approach an omission that can be deemed "trivial." *See, e.g., Jerry B. Wilson Roofing & Painting, Inc. v. Jobco–E.R. Kelly Assocs.*, 128 A.D.2d 953, 513 N.Y.S.2d 263 (App.Div.) (holding that 15% remaining on the contract was not substantial performance), *appeal denied*, 70 N.Y.2d 828, 518 N.E.2d 2, 523 N.Y.S.2d 490 (1987); *Sear–Brown Assocs. v. Blackwatch Dev. Corp.*, 112 A.D.2d 765, 492 N.Y.S.2d 266 (App.Div.1985) (13% remaining); *Fuchs v. Saladino*, 133 A.D. 710, 118 N.Y.S. 172 (App.Div.1909) (15% remaining); *Fox v. Davidson*, 36 A.D. 159, 55 N.Y.S. 524 (App.Div.1899) (5% remaining).

(App.Div.1989). As discussed previously, this effectively prohibits the principal from asserting an affirmative demand for contract proceeds against the surety under New York law as espoused by *Lawrence v. Miller* and its progeny.

 Additionally, after completion of the principal's obligation, the surety has an equitable right to be indemnified for any loss sustained. This equitable remedy, described as a right to "reimbursement," is in addition to any rights conferred via written agreement. *See Phelps v. Dawson,* 97 F.2d 339, 343 (8th Cir.1938). However, as further security, Hartford also acquired a contractual right of indemnification in the Indemnity Agreement, which provides that

> [t]he liability of the Indemnitors shall extend to and include the amount of all payments together with interest thereon from the date of such payments made by the Surety in good faith under the belief that (1) the Surety was or might be liable therefor or (2) the payments were necessary or advisable to protect any of the Surety's rights or to avoid or lessen the Surety's liability or alleged liability.

(Indemnity Agreement ¶ VI).

 Although both the common law doctrine of reimbursement and the contractual provisions of the Indemnity Agreement give Hartford the right to seek recovery of its costs and expenses in completing the construction contract, that recovery is not without limit. A surety is not entitled to indemnity for losses sustained through its own wrongdoing, and will be considered a "volunteer" in those situations. *See General Ins. Co. of Am. v. K. Capolino Constr. Corp.,* 903 F.Supp. 623, 626 (S.D.N.Y.1995). New York courts imply as a condition to recovery under

an indemnification contract that the surety act reasonably or in good faith. In the context of litigation involving defaulted contractors, a surety's failure to carry out its duties in good faith has often been asserted as a defense to claims for indemnity. *See, e.g., Aetna Casualty & Sur. Co. v. Namrod Dev. Corp.,* No. 91 Civ. 1609, 1992 WL 367100 (S.D.N.Y. Nov. 24, 1992); *Republic Ins. Co. v. Real Dev. Co.,* 161 A.D.2d 189, 554 N.Y.S.2d 574 (App.Div.1990); *Continental Casualty Co. v. Marman Dev. Corp.,* 23 Misc.2d 618, 198 N.Y.S.2d 375 (Sup.Ct.1960).

In addition, New York courts have in certain instances allowed principals to assert affirmative claims against a surety; either in situations where the principal had not breached, *see Spancrete Northeast, Inc. v. Travelers Indem. Co.,* 112 A.D.2d 571, 491 N.Y.S.2d 848 (App.Div.1985); *Petrossi Bros. Contracting Co. v. Town of Greece,* 29 N.Y.S.2d 305 (Sup.Ct.1941), or where the surety had completed the construction over the protests of a principal, coupled with a dispute regarding whether the contractor had actually breached, *see General Ins. Co. of Am. v. K. Capolino Constr. Corp.,* 908 F.Supp. 197 (S.D.N.Y.1995); *BIB Constr. Co. v. Fireman's Ins. Co.,* 214 A.D.2d 521, 625 N.Y.S.2d 550 (App.Div.1995).

However, John's Insulation has not cited one relevant case in support of its claim of entitlement to the escrowed monies. In fact, this Court was unable to find one reported New York decision that granted a defaulted contractor such an affirmative right to contract proceeds under a purported breach of an indemnity agreement, whether such monies were characterized as a surplus, a final payment, or a retainage.[4] Although John's

---

4. On the other hand, while discussing the facts presented in *Scarsdale Nat. Bank & Trust Co. v. United States Fidelity & Guar. Co.,* 264 N.Y. 159, 190 N.E. 330 (1934), one court stated in dicta that a completing surety has the right to retain a contract surplus, should one exist, as profit.

> The surety had entered into a performance agreement with the owner of a project to insure the subcontractor's performance. The contractor defaulted. Upon the contractor's default, the owner could complete the contract itself and charge the surety for any expenses which exceeded the contract price or could

require that the surety complete the performance of the contract. In the former case, the owner would retain the balance it withheld from the defaulting contractor and apply it to the cost of completing the contract. In the latter case, the surety would be entitled to any funds that had been withheld by the owner from the defaulting contractor and *could keep for itself any money which exceeded the cost of completing the contract.* As such, the surety was subrogated to the rights of the owner as against the defaulting contractor.

Insulation may have stated various defenses to any claim for indemnity forwarded by Hartford, the mere availability of those defenses does not translate into a right to affirmative relief.

Similarly, the complaint fails to allege any specific provision in the Indemnity Agreement which might create rights to any contract proceeds or surplus. Notably, there is no such right contained in the Indemnity Agreement, which provides to the contrary:

> With respect to each Bond issued hereunder on behalf of the Principal in connection with the performance of a contract, the Principal, the other Indemnitors hereby consenting, does hereby assign, transfer and convey to the Surety:
>
> (1) All rights of the Principal in, or growing in any manner out of, the contract or any extensions, modifications, changes, alterations or additions thereto;
>
> . . . .
>
> The assignments as provided herein shall take effect with respect to each and every such Bond issued hereunder as of its respective execution date, but only in the event of one or more of the following:
>
> (a) Any abandonment, forfeiture, or breach of, or failure, refusal or inability to perform, the terms and provisions of any contract guaranteed by a Bond issued hereunder . . . .

(Indemnity Agreement ¶ VIII). Thus, all contractual rights, including the right to payment, were assigned to Hartford, that assignment becoming effective upon the City's default of John's Insulation.

In its complaint, John's Insulation does make the broad allegation that it "is entitled to recover from Hartford the balance remaining in its hands or under its control after it has paid or reimbursed itself for all liability, losses and expenses to which it is reasonably entitled to under the indemnity agreement." (Complaint ¶ 21). Interestingly, that allegation bears a striking resemblance to the last sentence in the Indemnity Agreement's collateral deposit clause, which provides that

> [t]he Surety may sell any property assigned to it pursuant to this Agreement, or heretofore or hereafter deposited with the Company for any purpose, or which may be in the possession of the Surety, without incurring any liability of whatsoever kind. The sale may be public or private and with or without notice of the time or place thereof. When all liability of the Surety under the Bonds issued hereunder is terminated, any balance remaining in the hands of the Surety after the Surety has paid or reimbursed itself for all liability, losses and expenses for which it is entitled to indemnity under this Agreement shall be returned to the Indemnitors.

(Indemnity Agreement ¶ X).

Perhaps, John's Insulation has gleaned from this language what it believes to be the basis for an affirmative right to any contract surplus. However, construing a general right to remaining contract balances is a result which is reached only after reading the last sentence out of context. In actuality, this provision deals with collateral that is assigned to Hartford, pursuant to the Indemnity Agreement, as security. If Hartford sells the collateral to recover costs and expenses, the Indemnity Agreement provides that John's Insulation would receive any remaining proceeds from that sale after Hartford has been reimbursed. This is entirely consistent with the obvious result that obtains if the surety found it unnecessary to liquidate the collateral held on deposit—the collateral would be returned to the principal. This provision simply does not provide John's Insulation with any right to bring an affirmative claim to recover a contract balance alleged as a surplus.

In New York, the general rule is that "[a] principal cannot maintain a suit against his sureties for his own default." 63 N.Y.Jur.2d, Guaranty & Suretyship § 494 (1987). The complaint's sweeping and conclusory allegations, averring that John's Insulation is entitled "to recover from either the [City] or Hartford once the contract was complete," (Complaint ¶ 18), or that "Hartford has been paid or reimbursed for all

reasonable liability, losses and expenses under the indemnity agreement and that the [escrowed funds] are the property of [John's Insulation], free and clear of any claim of Hartford," (Complaint ¶ 23), do not compel this Court to reach a different result. Whether in its present complaint against Hartford or in its previous complaint brought against both the City and Hartford, John's Insulation has failed to allege that any contractual provision exists which would give it any right to claim monies due under the contract after it was defaulted.

Absent any alleged contract right to surplus funds, and without any sufficiently grounded legal right under New York law, the breach of contract claim cannot survive a Rule 12(b)(6) motion. John's Insulation, therefore, has forwarded no legally cognizable claim for affirmative relief on its first cause of action. Accordingly, the breach of contract cause of action is dismissed.

### C. The Negligence and Improper Accounting Claims

In New York, it is a long-standing principle that a simple breach of contract cannot form the basis of a tort action unless a legal duty which is independent of the contract has been violated. *See Clark–Fitzpatrick, Inc. v. Long Island R.R.*, 70 N.Y.2d 382, 389, 516 N.E.2d 190, 193, 521 N.Y.S.2d 653, 656 (1987); *Rich v. New York Cent. & Hudson River R.R.*, 87 N.Y. 382, 389 (1882). Moreover, "[t]he mere fact that the alleged breach involved a contract that encompassed the performance of services does not suffice as special additional allegations of wrongdoing which amount to 'a breach of a duty distinct from, or in addition to, the breach of a contract.'" *Niagara Mohawk Power Corp. v. Stone & Webster Eng'g Corp.*, 725 F.Supp. 656, 666 (N.D.N.Y.1989) (quoting *North Shore Bottling Co. v.. C. Schmidt & Sons, Inc.*, 22 N.Y.2d 171, 179, 239 N.E.2d 189, 193, 292 N.Y.S.2d 86, 92 (1968)).

Here, John's Insulation has failed to plead or otherwise allege any duty on the part of Hartford that arises independently of the Indemnity Agreement. Instead, John's Insulation merely repeats and realleges the paragraphs in its complaint that set forth the breach of contract claim, and adds only that "Hartford negligently allowed the [City] to change the contract and have extra work performed and material supplied causing Hartford to charge back the Plaintiff more than was necessary." (Complaint ¶ 26). In New York, however, an alleged breach of contract simply does not give rise to a negligence cause of action, absent an independent duty outside of the contract, even in a surety context such as the present case. *See, e.g., T.P.K. Constr. Corp. v. Southern Am. Ins. Co.*, 752 F.Supp. 105, 110 (S.D.N.Y.1990) (applying New York law to dismiss a negligence claim brought by a contractor against a bid bond surety). Accordingly, the negligence cause of action is dismissed.

Concerning the improper accounting cause of action, there is no showing that this claim should be considered anything other than a defense to the indemnification amount Hartford has sought. John's Insulation cites no relevant authority to support its assertion of such an affirmative right. There is likewise nothing in the Indemnity Agreement which would indicate that improperly accounting for monies received and expended on the job would create an affirmative right to demand turnover of funds. There is thus no reason to regard this cause of action in a manner any differently than the breach of contract cause of action. Therefore, the improper accounting claim will also be dismissed.

### III. CONCLUSION

In summary, Hartford is subrogee to both John's Insulation and the City, and is thereby subrogated to the rights for contract payments of any retainage, earned but unpaid funds, and unearned proceeds. Under New York law, John's Insulation as a defaulting principal may have viable defenses available to reduce Hartford's claim for indemnification. However, affirmative demands for relief are not available against a surety that has completed the underlying contract pursuant to a performance bond.

As noted previously, insofar as the complaint forwards viable defenses to Hartford's demand for indemnity, filed as a general unsecured claim in this bankruptcy case, the

**692**

proper vehicle for bringing such objections, standing alone, is by motion. Therefore, for all of the above-stated reasons, Hartford's motion is granted and the complaint is dismissed in its entirety. Considering the futility of allowing any further leave to amend, the dismissal is with prejudice.

*AN ORDER CONSISTENT WITH THIS DECISION IS BEING ENTERED SIMULTANEOUSLY HEREWITH.*