In re Gerald F. HOYT and Carolyn M. Hoyt, Debtors.

IBA, Inc., Plaintiff,

v.

Gerald F. Hoyt, Defendant.

Bankruptcy No. 03–20001.
Adversary No. 05–2023.

United States Bankruptcy Court, W.D. New York.

June 27, 2005.

14

Hope Olsson, Rochester, NY, for Debtors.

## DECISION & ORDER

JOHN C. NINFO, II, Chief Judge.

### BACKGROUND

On January 2, 2003, Gerald F. Hoyt ("Hoyt") and Carolyn M. Hoyt (collectively, the "Debtors"), filed a petition initiating a Chapter 13 case, which was converted to a Chapter 7 case on November 3, 2004. On the Schedules and Statements required to be filed by Section 521 and Rule 1007, the Debtors indicated that: (1) they were each an officer and shareholder of High Country Dairy Supplies, Inc. ("Dairy") and High Country IBA, LLC; (2) they had guaranteed business debt, or creditors had alleged that they were otherwise liable for business-related debts, of in excess of $214,000.00; and (3) IBA, Inc. ("IBA") had asserted a claim against Hoyt individually for alleged business alter-ego liability, which was: (a) in an unknown amount; (b) contingent, unliquidated and disputed; and (c) at issue in a pending District Court, Weld County, Colorado action against Hoyt and Dairy (the "Colorado Action").

IBA actively participated in the Debtors' Chapter 13 case by: (1) having local counsel appear at the February 7, 2003 Initial Section 341 Meeting of Creditors; (2) on March 7, 2003, filing a Motion for Authority to Conduct a Rule 2004 Examination, which asserted that: (a) there was a discrepancy in the scheduled sale price for the Debtors' 2002 sale of a five-acre Colorado building lot; and (b) the Debtors had failed to disclose the 2002 sale of their Colorado residence, which motion the Court granted after the Debtors acknowledged that they had inadvertently failed to

disclose the sale and the application of the net proceeds to the purchase of their current New York residence; (3) on March 24, 2003, filing an Objection to the Confirmation of the Debtors' Plan; and (4) on May 20, 2003, filing a Motion for Relief from the Stay, which: (a) requested that IBA be authorized to continue to prosecute the Colorado Action against Hoyt in order to establish whether it had a claim against him individually; (b) asserted that Hoyt was the alter-ego of Dairy, because of co-mingling of assets, undercapitalization, the transfer of assets from Dairy to Hoyt and members of his family for less than fair consideration, and the lack of the observance of corporate formalities, and thus he was personally liable for the debts and obligations of Dairy; (c) asserted that: (i) between May 21, 2001 and October 31, 2001, Dairy and Hoyt purchased $427,214.19 of dairy supplies from IBA; and (ii) after the application of a $75,620.77 credit for some returned supplies, there was a balance of $351,593.42 still due from Dairy and Hoyt (the "IBA Obligation"); and (d) asserted that the Debtors had filed their Chapter 13 petition in bad faith just prior to the conclusion of discovery in the Colorado Action.

On February 20, 2004, after the Motion for Relief from the Stay had been granted, IBA filed an additional Objection to the Confirmation of the Debtors' Amended Plan, which included a request for either the dismissal or conversion of the case and which asserted, in part, that: (1) the Debtors various Plans were not proposed in good faith, because among other things, the Debtors' Schedules and Statements, as originally filed and amended, were materially inaccurate relative to their assets and income; and (2) as a result of the anticipated finding of alter-ego liability as to Hoyt in the once again pending Colorado Action, the Debtors did not qualify for Chapter 13 because their unsecured debt, including the amounts alleged to be owed to IBA, exceeded the debt limits provided for in Section 109(e).

The Colorado Action resulted in an August 19, 2004 Findings of Fact, Order and Judgment (the "Colorado Judgment"), which determined that Hoyt was the alter-ego of Dairy and personally liable for its debts and obligations, including the IBA Obligation.

On October 19, 2004, after the entry of the Colorado Judgment, the Debtors' Chapter 13 Trustee filed a Motion to Dismiss their Chapter 13 case because their unsecured debt now exceeded the limits provided for in Section 109(e). Upon the request of the Debtors, their Chapter 13 case was converted to this pending Chapter 7 case.

On February 25, 2005, IBA filed an Adversary Proceeding, which requested that the Court: (1) find the IBA Obligation to be nondischargeable pursuant to Section 523; and (2) deny Hoyt's discharge pursuant to Section 727. The Complaint in the Adversary Proceeding with respect to the claims of nondischargeability under Section 523 asserted that: (1) as determined by the Colorado Judgment, Hoyt was at all times the alter-ego of Dairy and liable for its various debts to IBA, including the IBA Obligation; (2) the IBA Obligation was for the purchase on credit of dairy supplies for the period from between May 21, 2001 and October 31, 2001; and (3) the Colorado Judgment specifically found that: (a) extensive commingling of funds between Hoyt's personal account and Dairy's corporate accounts took place, including telephone wire transfers totaling hundreds of thousands of dollars, checks written on the corporate accounts to "cash," and use of the American Express card for personal, rather than business purposes;[1] (b) the

---

1. The Findings did not state when these events occurred.

Debtors used Dairy's assets for personal purposes, such as funding their son's college education and paying debt service on personal debts;[2] (c) Dairy was inadequately capitalized; and (d) it would promote injustice to allow Hoyt to hide behind Dairy's corporate shield so that he could use his control over Dairy to convert corporate assets to the detriment of creditors.

As and for a cause of action under Section 523(a)(4),[3] IBA asserted in the Complaint that: (1) by failing to return the supplies purchased from IBA when they were unpaid for and IBA demanded their return, Dairy and Hoyt had converted IBA's property; (2) by failing to return, as demanded, various audio and visual products, price lists, customer lists and marketing materials, Dairy and Hoyt had converted IBA's property; (3) Hoyt deceitfully misappropriated IBA's property with wrongful intent by failing to disclose his use of Dairy as his alter-ego; and (4) the IBA Obligation in the amount of $351,593.42 should be determined to be nondischargeable pursuant to Section 523(a)(4).

As and for a cause of action under Section 523(a)(6),[4] IBA asserted in the Complaint that: (1) because Hoyt was the alter-ego of Dairy, he exercised dominion and control over property rightfully belonging to IBA, which he was not authorized to use for his own purposes, and that Hoyt's conversion of IBA's property was willful, having been done with the intent to injure IBA, and was also malicious, having been done without justification or excuse; (2) IBA suffered a willful and malicious injury in the amount of $351,593.42; and (3) the IBA Obligation should be determined to be nondischargeable pursuant to Section 523(a)(6).

On March 29, 2005, Hoyt filed a Motion to Dismiss IBA's Section 523 nondischargeability causes of action, which asserted that: (1) with respect to the Section 523 nondischargeability causes of action contained in the Complaint, even if the Court took all of its factual allegations as true, which it must for purposes of the Motion to Dismiss, the Complaint failed to state a claim upon which relief could be granted; (2) it was clear from the allegations of the Complaint itself, that IBA sold and delivered the dairy supplies in question in the ordinary course of the commercial business of IBA to Dairy and/or Hoyt, to the extent of the finding in the Colorado Judgment that Hoyt was the alter-ego of Dairy, without taking any security interest or retaining any other property interest in those dairy supplies; (3) the primary allegation in the Complaint was that Dairy and/or Hoyt, as its alter-ego, converted IBA's property, however, without IBA having any retained property interest whatsoever after its sale of the dairy supplies, Dairy and Hoyt could not have converted IBA's property, to wit, the dairy supplies sold by it to Dairy and Hoyt in the ordinary course of business under the

---

2. The Findings did not state when these events occurred.

3. Section 523(a)(4) provides that:

   (a) A discharge under section 727, 1141, 1228(a) 1228(b), or 1328
   (b) of this title does not discharge an individual debtor from any debt-
     (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]

11 U.S.C. § 523 (2005).

4. Section 523(a)(6) provides that:

   (a) A discharge under section 727, 1141, 1228(a) 1228(b), or 1328
   (b) of this title does not discharge an individual debtor from any debt-
     (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]
   11 U.S.C. § 523 (2005).

Uniform Commercial Code without the retention of any legal interest whatsoever, thereby transferring all incidence of ownership to Dairy and/or Hoyt; (4) in connection with its sale of dairy supplies to Dairy and/or Hoyt, IBA produced no documentation to indicate that an express trust relationship was established; (5) there are no allegations in the Complaint demonstrating that Dairy or Hoyt had a fiduciary duty to or otherwise acted in a fiduciary capacity with respect to IBA; (6) the decision of the United States Supreme Court in *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) (*"Geiger"*), established that for there to be an exception to discharge under Section 523(a)(6), the Court must find a deliberate or intentionally caused injury, and that not even every intentional tort, such as a conversion, would always result in an exception to discharge, because at times conversion could result from careless or even reckless behavior; (7) exceptions to discharge under Section 523 must be strictly construed in order to promote the underlying Congressional policy of granting an honest and unfortunate debtor a fresh start; and (8) the essence of the IBA Complaint is that there was a sale of goods in the ordinary course of IBA's business on unsecured credit, which was followed by nonpayment and a failure to return any unsold goods upon demand, which may constitute a breach of contract, but does not result in an indebtedness or obligation that is nondischargeable under either Section 523(a)(4) or Section 523(a)(6).

On April 21, 2005, IBA filed a Response to the Motion to Dismiss (the "Response"), which asserted that: (1) it is not necessary to demonstrate a fiduciary relationship to have an indebtedness determined to be nondischargeable under Section 523(a)(4) if it resulted from embezzlement or larceny; (2) with respect to IBA's cause of action under Section 523(a)(6), the Colorado

Judgment, attached as an exhibit to the Complaint, clearly found that Hoyt had converted corporate assets; (3) the Court should grant a Motion to Dismiss only when it appears with certainty that no set of facts could be proven by the plaintiff at trial which would entitle it to relief; and (4) the allegations in IBA's Complaint, which must be accepted as true, are legally sufficient to demonstrate causes of action under Section 523(a)(4) and Section 523(a)(6) because Hoyt: (a) misappropriated IBA's property with wrongful intent and deceit, since he took IBA's property knowing full well that he was using Dairy exclusively for his own personal and family uses; (b) misappropriated IBA's property that had been entrusted to him; (c) converted IBA's property for his own purposes from the outset of IBA's relationship with Dairy; (d) obtained goods and other property from IBA and then misappropriated them under the circumstances alleged in the Complaint, which constitutes either embezzlement or larceny, notwithstanding that IBA may not have ever retained a security interest in the dairy supplies sold to Dairy and/or Hoyt; (e) was not authorized to use IBA's property for his own purposes; (f) converted IBA's property with the intent to injure IBA, with no justification or excuse for the willful and malicious conversion; and (g) was commingling funds and transferring hundreds of thousands of dollars for his own personal use at the time he was soliciting and accepting goods from suppliers such as IBA.

On May 9, 2005, IBA filed a First Amended Complaint (the "Amended Complaint"), which asserted essentially the same allegations as contained in the Complaint, with the exception that it now asserted that: (1) Hoyt knew when he and Dairy purchased dairy supplies from IBA in 2001 that he had created Dairy as a

mere shell for his own personal purposes, and that he had been using it as a means of using its creditors' money and property, including the money and property of IBA, to fund his personal and family expenses such as payment of his son's college tuition, debt service on the Debtors' personal vehicles, large cash withdrawals and more; (2) as determined in the Colorado Judgment, Dairy was at all times insolvent and grossly undercapitalized; and (3) using IBA's dairy supplies for his own purposes constituted conversion of IBA's property.

On several occasions the Court heard oral argument on the Motion to Dismiss, and it also received a number of additional submissions on behalf of the parties.

At oral argument, the attorneys for IBA acknowledged that it had deliberately not included a Section 523(a)(2)(A) fraud claim in its Complaint because it did not believe that it could demonstrate the required element of reasonable reliance upon any misrepresentations that Hoyt or Dairy may have made.[5]

## DISCUSSION

### I. *Motions to Dismiss Complaints Under Section 523(a) For a Failure to State a Cause of Action*

Rule 8(a)(2) of the Federal Rules of Civil Procedure, made applicable by Rule 7008, requires that a pleading which sets forth a claim for relief contain a short and plain statement of the claim showing that the pleader is entitled to relief.

Rule 8(f) of the Federal Rules of Civil Procedure, requires that all pleadings be construed to do substantial justice.

Rule 9(b) of the Federal Rules of Civil Procedure, made applicable by Rule 7009, requires that in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.

Rule 9(f) of the Federal Rules of Civil Procedure, provides that for the purpose of testing the sufficiency of a pleading, averments of time and place are material and shall be considered like all other averments of a material matter.

This Court, in considering motions to dismiss under Rule 7012 for a failure to state a claim upon which relief can be granted, is aware that: (1) the purpose of such a motion is to test the legal sufficiency of a complaint; (2) the court should view the complaint in a light that accepts the truth of all material factual allegations and draw all reasonable inferences in favor of the plaintiff; (3) the complaint need only meet the liberal requirement of a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests; and (4) nevertheless, the complaint should be well pleaded and it must contain more than mere conclusory statements that a plaintiff has a valid claim of some type and is thus deserving of relief, *See In re John's Insulation, Inc.,* 221 B.R. 683, 687 (Bankr.E.D.N.Y.1998) and the cases cited therein.

---

5.  Section 523(a)(2)(A) provides that:
    (a) A discharge under section 727, 1141, 1228(a) 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-
        (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

    (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]
11 U.S.C. § 523 (2005).

The Court is also aware that: (1) a motion to dismiss pursuant to Rule 7012 may not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief; and (2) the Bankruptcy Court is not entitled to consider matters outside the pleadings or to weigh evidence that might be presented at trial. *See In re Albion Disposal, Inc.,* 217 B.R. 394, 401 (W.D.N.Y.1997) (*"Albion Disposal"*).

The Court is further aware that: (1) justice requires that the defendant be served with a complaint which states the particular statute or code section relied upon by the plaintiff and a set of facts to provide the defendant with enough information to formulate and file an answer, *See In re Marceca,* 127 B.R. 328, 332 (Bankr.S.D.N.Y.1991); (2) if the plaintiff is predicating his cause of action upon fraud, he must do so with specificity as required by Rule 9(b) of the Federal Rules of Civil Procedure, *See Marceca* at 332–33; and (3) if the Court relies upon matters found outside the complaint, it is required to convert the motion to dismiss into a motion for summary judgment, *See John's Insulation, Inc.* at 685.

In addition, The Court is aware that debtors generally will not file a motion to dismiss a complaint in an adversary proceeding brought under Section 523(a) when they believe that the complaint was simply inartfully prepared. This is because debtors know that courts, in the interests of justice and as they attempt to balance the policies of affording a debtor a fresh start as soon as possible with the direction that certain debts not be discharged and that less than honest or uncooperative debtors not receive a discharge, are reluctant to dismiss an adversary proceeding brought under Section 523(a) simply because of an inartfully drawn pleading where facts and circumstances exist that might entitle the Plaintiff to relief.

## II. *Section 523(a)(4) Cause of Action*

This Court agrees with Hoyt, that the allegations in IBA's Complaint and First Amended Complaint in the Adversary Proceeding fail to state a claim under Section 523(a)(4) upon which relief can be granted, for the following reasons, as well as those set forth in Section IV, below:

1. IBA has failed to demonstrate that the IBA Obligation resulted from a fraud or defalcation by Hoyt while he was acting in a fiduciary capacity, since IBA has failed to demonstrate that there was any expressed or implied trust in existence with respect to its relationship with Dairy or Hoyt, or that Dairy or Hoyt were otherwise acting in a fiduciary capacity as to IBA;

2. IBA has failed to demonstrate that the IBA Obligation resulted from embezzlement or larceny. IBA sold the dairy supplies in question to Dairy and/or Hoyt, as its alter-ego, in the ordinary course of its commercial business in accordance with the Uniform Commercial Code, without retaining a security interest or other property interest, thereby transferring title and all incidence of ownership to Dairy and/or Hoyt under the Uniform Commercial Code in the ordinary course of IBA's business. Embezzlement, which this Court understands for purposes of Section 523(a)(4) to be the fraudulent appropriation of property by a person to whom such property has been entrusted, and into whose hands it has lawful-

ly come, could not have occurred. Here there was no entrustment because of the transfer of title and ownership. There was a commercial sale on credit;

3. For these same reasons, larceny, which this Court understands for the purposes of Section 523(a)(4) to be the fraudulent and willful taking and carrying away of property of another with intent to convert the property to the taker's use without the consent of the owner, could not have occurred. IBA was no longer the owner of the dairy supplies in question after it had sold them to Dairy and/or Hoyt on credit in the ordinary course of IBA's commercial business; and

4. At the various oral arguments on the Motion to Dismiss, the Court specifically asked the attorneys for IBA whether IBA was aware of sufficient facts, could otherwise demonstrate, or were even alleging, that Hoyt had ordered the dairy supplies in question from IBA with the specific intention never to pay for them and with the knowledge that neither he nor Dairy had the ability to pay for them, which the Court believed would constitute fraud under Section 523(a)(2)(A). The Court was advised that although IBA had considered asserting such a cause of action, it did not believe that it could prevail on such a cause of action because it was unable to demonstrate the required element of reasonable reliance. This Court must defer to the critical analysis of IBA's very competent counsel on that issue, but believes that the "square peg" cause of action for fraud under Section 523(a)(2)(A), applicable in a situation of ordering goods with no ability or intent to ever pay for them, cannot be forced into the "round hole" cause of action under Section 523(a)(4) when the plaintiff is unable to demonstrate the existence of all of the necessary elements under Section 523(a)(2)(A).

## III. Section 523(a)(6) Cause of Action

The Court agrees with Hoyt, that the allegations in IBA's Complaint and First Amended Complaint in the Adversary Proceeding fail to state a claim under Section 523(a)(6) upon which relief can be granted, for the following reasons, as well as those set forth in Section IV, below:

1. To the extent that IBA's Section 523(a)(6) cause of action is based upon allegations and a theory of conversion, for the reasons set forth above, including that IBA retained no security interest or other ownership interest in the dairy supplies sold to Dairy and/or Hoyt, it cannot prevail on an alleged willful and malicious cause of action for conversion;

2. An ordinary breach of contract, nonpayment cause of action cannot constitute a willful and malicious injury cause of action under Section 523(a)(6); and

3. As set forth above, a Section 523(a)(2)(A) "square peg" cause of action for fraud, where there has been a commercial sale of goods in the ordinary course of business which go unpaid for and the plaintiff cannot demonstrate all of the necessary elements of fraud, cannot be forced into the "round hole" cause of action under Section 523(a)(6) for a willful and malicious injury.

## IV. Overview of the IBA Complaint in Support of the Decision to Grant the Motion to Dismiss

1. Often at the pleadings stage of a Section 523 nondischargeability ad-

versary proceeding, the plaintiff requires discovery in order to develop additional facts and evidence so that it can fully prosecute its various causes of action. In the case of IBA, even after: (a) extensive discovery in connection with the trial in the Colorado Action and a Rule 2004 exam in this Court; and (b) several oral arguments and supplemental pleadings from which it appears that IBA knows everything about its relationship with Dairy and Hoyt for purposes of a Section 523 Adversary Proceeding, IBA is still unable to articulate a clear set of facts and allegations from which this Court can determine that it could ultimately prevail at trial on either Section 523(a)(4) or the Section 523(a)(6) cause of action included in its Complaint and First Amended Complaint;

2. Although the Colorado Judgment determined that Hoyt had converted the corporate assets of Dairy to his own use, that conversion cannot be the basis of a cause of action under Section 523(a)(4) that he converted the property of IBA, which was sold to Dairy and/or Hoyt, as its alter ego, on credit in the ordinary course of IBA's business under the Uniform Commercial Code. This is especially true when IBA has asserted that it cannot demonstrate that the purchases were fraudulent under Section 523(a)(2)(A). The Colorado Judgment determining that Hoyt was the alter-ego of Dairy does not negate Dairy as a legal entity, which itself filed a Chapter 7 case in Colorado. It is simply an equitable determination that Hoyt should also be liable for the debts of Dairy. Perhaps the conversion, larceny and willful and malicious claims of non-

dischargeability should have been filed by the Chapter 7 Trustee in the Dairy bankruptcy case, who unfortunately may have had no funds with which to file and prosecute them;

3. The IBA Complaint includes numerous allegations, which appear to be serious on their face, in support of its. Section 727 causes of action. These may result in the denial of the Debtors' discharge, and those causes of action are not the subject of the pending Motion to Dismiss;

4. Exceptions to discharge under Section 523 generally are construed strictly in favor of a debtor to promote the underlying Bankruptcy Code policy of an honest but unfortunate debtor receiving a fresh start. Although it appears that Hoyt may not in all respects be an honest and unfortunate debtor as to the creditors of Dairy, to the extent of a number of the specific findings included in the Colorado Judgment, not every "bad act" results in a nondischargeable obligation under Section 523; only those "bad acts" specifically provided for; and

5. If being undercapitalized could result in the business debts incurred by individuals or principals of a corporation being determined to be nondischargeable under Section 523 on a strict liability basis, we would have far fewer businesses in this country. Furthermore, since IBA made a start-up loan to this business, which has not fully been repaid, it had to have known of its undercapitalization.

## CONCLUSION

The IBA Obligation arose from and is the result of the sale of goods in the ordinary course of business by IBA to

Dairy and/or Hoyt. It did not arise or result from any of the elements set forth in Section 523(a)(4) or Section 523(a)(6). The actions of Hoyt with respect to Dairy, including his conversion of some of the assets of Dairy as found in the Colorado Judgment, may have contributed to the inability of Dairy to pay the IBA Obligation, but they were not the basis for the Obligation.

IBA's Section 523(a)(4) and Section 523(a)(6) nondischargeability causes of action are dismissed for the failure to state a claim upon which relief can be granted.

A pretrial conference on IBA's Section 727 causes of action is scheduled for July 26, 2005 at 10:30 a.m.

**IT IS SO ORDERED.**